FRANK WALTERS, Appellant, v. SANDERS MOTOR COMPANY,
Appellee.

No. 45300.

NOVEMBER 12, 1940.

REHEARING DENIED FEBRUARY 21, 1941.

Hallagan, Fountain, Steward & Cless, for plaintiff, appellant.

Sam Abramson and Abe Myers, for defendant, appellee.

HAMILTON, J.—Plaintiff delivered his truck to defendant for repairs to the gas tank. To make the repairs, it was necessary to drain or remove the gasoline. It was after dark and artificial light was necessary. The regular lighting system in the garage or shop was not sufficient to enable the workman to see under the truck where the gas tank was located. Defendant was equipped with what is referred to as a "trouble light", which consisted of a light bulb attached to a long cord plugged into a wall socket. The bulb was incased in a metal wire netting and near the bulb was attached a metal hook for convenience in hanging the light. In removing the gasoline, defendant's employee used this light and by means of a "creeper", a kind of conveyor on small metal casters, rolled himself beneath the truck. He removed the drain plug, filled two buckets, which were funnel shaped at the top, set them behind the truck, and, then, got a metal pan about two feet square and six inches deep, filled that about two-thirds full, and, there being still more gasoline in the tank, he replaced the drain plug and had started to get out from under the truck when something occurred which ignited the fumes from the gasoline.

The question involved is whether or not the plaintiff sustained the necessary burden of proof to warrant the court in submitting the case to the jury.

The plaintiff introduced evidence showing that he delivered the truck in good condition to the defendant and its return in its damaged condition together with the amount of his damages and rested his case. The defendant then introduced evidence showing that the truck was damaged by fire and evidence disclosing the facts and circumstances relative to the origin thereof. Plaintiff put on no rebuttal testimony. At the close of the evidence, the motion to direct a verdict in favor of the defendant was made and sustained.

The case involves the law of bailments. The rule is that the bailor makes out a prima facie case by proof of delivery of the property in good condition and redelivery in a damaged con-

dition with proof of the amount of damages. The bailee must then go forward with his proof to rebut this presumption or prima facie case by showing that the loss occurred through some cause consistent with due care on his part, in which case he is entitled to the verdict, unless the bailor sustains his burden of proof with evidence that, nevertheless, the loss would not have occurred but for the negligence of the bailee. Hunter v. Ricke Bros., 127 Iowa 108, 102 N. W. 826; 6 Corpus Juris, page 1160.

In the instant case, defendant contends that its evidence was consistent with due care and that, plaintiff having failed to show anything to the contrary, the court properly sustained the motion to direct a verdict; while the plaintiff claims that the defendant's evidence made out a question of negligence for the jury and, hence, there was no necessity for introducing any additional proof and that the question should have been presented to the jury. A bailee is not an insurer of the safety of the property entrusted to his care but must exercise ordinary care for its safety and the sole question in this case is whether or not there was proof sufficient to go to the jury that the defendant was negligent in respect of the care of the property entrusted to it. Ordinarily, where the bailee shows that the property was lost in a fire over which he had no control, there can be no recovery, as in the case of Hunter v. Ricke Bros., supra, where the loss occurred when a barn was burned. The court said [127 Iowa 108, 112, 102 N. W. 826, 827]:

"No one pretends to know the origin of the fire, and nothing was shown indicating that it grew out of any cause allowed to exist or set in motion by the defendants."

It was held, under the circumstances, that the court properly directed a verdict for the defendant. In the case of Kubli v. First Nat. Bank, 193 Iowa 833, 843, 186 N. W. 421, 426, there was involved a gratuitous bailment—property left with the bank for safekeeping which was stolen. The trial court directed a verdict for the defendant and this court reversed the case holding:

"Under the evidence, even that of defendant itself, the jury would have been authorized to find that it did not use the

care in keeping the plaintiff's bonds which it habitually used in the care of its own property of similar kind.''

The facts in the instant case present a very close question but, on the whole record, we believe the case should have been submitted to the jury.

The appellee contends that the plaintiff did not attempt, by rebuttal testimony, to show that the defendant did anything inconsistent with due care. Perhaps the plaintiff could have introduced testimony tending to show that the conduct of defendant's employee was not in keeping with due care and prudence, however he was not required to do this if the explanatory evidence of the defendant disclosed want of due care or disclosed facts from which the jury might have found want of due care. The facts, as we glean them from the defendant's testimony, are as follows:

In removing the gas plug and reinserting it, which was done two or three times, about a pint of gasoline was allowed to spill on the cement floor. Instead of hooking the light cord up where it could not come in contact with the gasoline, it was left lying on the floor where the gasoline was spilled. While the evidence shows that the cord that was used was up-to-date, modern equipment and there is no claim to the contrary, yet, in describing the construction of this cord, the witness said:

''The rubber cord around the socket is split so that you can remove your socket. That leaves an opening between the outside and the socket itself. There is also an opening around the switch on each side so a little moisture in either place would make a contact so the sparks would jump out. That is possible, could cause a static charge of electricity to set it off * * *.''

This being true, it would seem to us that due care commensurate with the danger would prompt one, in using this cord and light, to take every precaution to prevent the gasoline, some portion of which would necessarily be spilled in removing and reinserting the plug, from coming in contact with this light cord charged with 110 volts of electricity. As we read the record, no precaution whatever was taken in this respect. The witness testified that he knew gasoline was a very inflammable material; that fumes would radiate from it and the greater the surface

exposed the more fumes there would be raised from that surface so that there would be more fumes raised from the gasoline in the open than there would be if the gasoline had been placed in another bucket. The witness admitted that it wasn't necessary to spill a lot of gasoline on the floor. He was asked this question:

"Q. You don't mean to tell me that it is customary for garage mechanics to spill a full quart of gasoline on the floor whenever they drain gasoline? A. We don't aim to, of course not.

" * * * Spillage of gas occurred each time I removed and replaced the gas plug. I don't believe there would be more than a pint spilled. That would be pretty hard to guess. It spreads very rapidly and you cannot tell how much you actually have spread out over the floor. Did not mop up between times. It was still there when the fire occurred. When I took the buckets out from under the truck, in order to get this pan, I left my trouble light right there. I left it right there burning all the time. It was lying on the floor under the truck—down there where the gasoline was spilled."

It is true that no one testified that the cord got wet, but it is a fair inference from the above testimony that it would get wet. It is also true that no one testified just where the spark came from or what caused it, however all the potential instrumentalities out of which this fire occurred were under the control of defendant. In other words, this is not the ordinary case of destruction of property by fire where the origin of the fire is unknown or where the fire originated from causes over which the bailee has no control. The witness admits there were these openings into which moisture might enter and which could cause a contact from which an electric spark could originate and it is significant that the flash occurred simultaneously with the moving of this cord. The witness says:

"As I recall, I was preparing to remove this large pan, the last one I drained, and just as I did I moved the trouble cord, the light cord, and there was a flash. That is all I can say. I don't know where it came from or what caused it, everything was afire around me and I hustled and got around there and grabbed my two buckets I had drained previously and set them out in the

alley. * * * I was directly beneath the gasoline tank when the fire occurred. * * * I had moved my trouble cord.''

On cross-examination, he testified:

''I started to move the trouble cord and this happened. I hadn't even touched the pan when the flash came. * * * I undertook to crawl out and started to pull this light along with me and there was a flash and that happened and the gasoline on the floor was all up in flames.''

It is true that three witnesses, employees of the defendant, testified, in substance, that the method used and the equipment was the usual method and equipment made use of in draining gasoline from the tank. However, it is interesting to note that none of them go so far as to state that it is usual and customary to lay upon the floor an electrically charged light cord where it will come in direct contact with the gasoline, as in the instant case. And, if they had so testified that this was the usual, ordinary and customary thing, this custom in and of itself would not necessarily be conclusive that this was a reasonably safe or careful way of doing such work. As was aptly stated by the eminent Mr. Justice Holmes in his opinion in Texas & P. R. Co. v. Behymer, 189 U. S. 468, 470, 23 S. Ct. 622, 47 L. Ed. 905:

''What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.''

Jurors might find it difficult to reconcile with due care the placing of this light cord on the floor and the spilling of a pint of gasoline on the floor where it would come in contact with the light cord as was permitted by defendant's employee, and, while there is no positive proof that this caused static electricity producing the fire, the facts and circumstances are such that we believe a jury would be warranted in finding that there was causal connection between the negligence of the defendant's employee and the fire that ensued. In other words, the bailee, in attempting to remove the burden which the law casts upon it of not restoring the property in good condition to the bailor, produced facts which involve it in negligence, and, therefore, defendant was not entitled to a directed verdict. In other words,

he failed to show that the loss occurred through some cause consistent with due care on his part. This the bailee is required to do under the very authorities cited and relied upon by the appellee, namely, 6 Corpus Juris, page 1160; and Hunter v. Ricke Bros., supra. The case of Royal Ins. Co. v. Collard Motors, Inc., La. App., 179 So. 108, cited by appellant, is a case almost identically on all fours with the facts in this case and in that case the lower court directed a verdict in favor of the bailee and the supreme court reversed the case holding that, under the fact situation, the burden was on the bailee to show that the fire was not due to any acts of negligence on its part. Our holding does not go to that extent but much of the discussion in the opinion of the Louisiana court is applicable to the situation confronting us in the instant case.

For the reasons indicated, the judgment of the trial court should be and is reversed.—Reversed.

MILLER, SAGER, STIGER, OLIVER, BLISS, and HALE, JJ., concur.