LELAND STEVENSON et al., Appellees, v. CHARLES F. REIMER, Appellant.

No. 47345.

(Reported in 35 N. W. 2d 764)

February 8, 1949.

Rehearing Denied April 8, 1949.

Johnson & Johnson, of Knoxville, and Haupert & Robertson, of Marshalltown, for appellant.

Johnston & Shinn and H. E. deReus, all of Knoxville, for appellees.

Hale, J.—The owners of the plane maintained an airport near Knoxville, and as part of their business rented airplanes to qualified persons. They allege that on June 5, 1947, they leased to the defendant an airplane in good condition, and while it was in his exclusive possession it was damaged and wrecked.

Defendant alleges in his answer that he applied to plaintiffs for an airplane to rent and was assigned the plane in question; that after he had started the airplane he discovered the runway was soft and muddy and that plaintiffs had permitted same to grow up in grass and weeds; that on account of the condition of the runway he was unable to attain sufficient speed to take off; that there were tall weeds at the end of the runway which obscured the fence and on account of that he did not discover said fence in time to avoid a collision; that said collision was not caused by any negligence on his part but

was caused by the negligence of the plaintiffs in failing to maintain the airport and runways in a proper and safe condition.

The airport operated by the plaintiffs is located on a forty-nine-acre tract with a north-south runway 200 feet wide and 2000 feet long, which is crossed about 600 feet north of the south end by an east-west runway 150 feet wide and 1100 feet long. The entire tract is surrounded by a fence with woven wire at the bottom and barbed wire at the top, with fence posts, some wood and some steel, about 4½ feet tall and about 16 feet apart. The flying time was sold by what were called "blocks" entitling the purchaser to five hours flight time.

Accompanied by a friend and Wallace, an employee of the plaintiffs, on the morning in question, June 5, 1947, in accordance with previous arrangement, defendant drove to the airport. The proprietors of the airport, plaintiffs, owned two airplanes—one a Luscombe, which was selected for the flight. The field was soft. The north-south runway was practically level. The east-west runway was lower at each end than in the middle where it crossed the other runway; the weeds and grass, according to the defendant, being higher at the west end of the east-west runway. According to the defendant's testimony both runways were in use, but the wind being in the proper direction the defendant used the east-west runway, traveling from the east to the west. There were some tracks in the runway indicating that it had been used that morning.

Defendant first taxied to the east end and then turned around into the wind. He states that when he crossed the north-south runway he was going at the approximate speed of forty miles an hour, not quite enough speed to be airborne. The plane reached a soft spot in the runway and that together with the weeds slowed him down. The weeds were between twenty-four and thirty inches high along the west end of the runway and obscured the fence at the end, and all that was visible were the barbed wires. He alleges that he could not stop because if he had put on his brakes they would have put the plane over on its back, and he further alleges that he was too close to the fence when he saw the wires to stop, and he attempted to go through the fence between the posts and break the wires, but

the plane caught in the woven wire which was concealed by the weeds and upset the plane; that there were no signs of any kind indicating there was a soft spot in the runway; that if any markers were on the west end of the runway they were obscured by the grass and weeds and could not be seen. These are the general facts as shown by the evidence.

On trial plaintiffs introduced evidence showing, in general, the leasing of the plane in good condition to the defendant, and its return in a damaged condition, and the amount of damages. At the close of all the testimony defendant filed a motion for a directed verdict which was overruled by the court, and the jury was instructed and it returned a verdict for the plaintiffs. Motion for new trial was overruled, and defendant appeals.

I. Defendant's first assignment of error relates to the court sustaining plaintiffs' motion to strike paragraph 7 of defendant's answer and amendment thereto, and refusal to permit the introduction of testimony regarding an alleged contract between the parties. This paragraph 7 related to a conversation between the defendant and one of the plaintiffs prior to the purchase of flying time on the field, and was claimed to have occurred in November 1946, following which defendant purchased the block of time. The flight in question was attempted to be made in June 1947. Paragraph 7, as amended, is as follows:

"Further answering and for separate defense the defendant states, that sometime prior to the date in question this defendant had a conversation with the plaintiffs in regard to leasing airplanes and plaintiffs quoted to him a rate per hour which this defendant considered high and he asked for a lower rate per hour than plaintiffs were offering; that the plaintiffs at that time informed the defendant that they were carrying insurance which fully protected them and all of their lessees of planes from any and all damages whatsoever whether caused by their own negligence or by the negligence of the lessees of their planes and that by reason of this coverage they were paying a high rate for this insurance and could not afford to lease planes at a lower rate; that relying on these statements that the plaintiffs' insurance would cover any accident that might occur to

this defendant irrespective of whether caused by negligence or otherwise this defendant did at various times including the time in question lease airplanes from the plaintiffs which he would not have done at that rate had it not been for the plaintiffs assuring him that he was protected against loss or damages of every kind should he meet with accident irrespective of whether said accident was caused by his negligence or otherwise."

■ It seems to us that this issue should have been submitted. The jury had a right to consider this allegation of the defendant. If established by the evidence and the jury found that the defendant was so protected as alleged, and such was the understanding between the parties, it amounted to an inducement by the plaintiffs to the defendant and became a part of the contract of hire. An offer of evidence was made to that effect, objection to which was sustained. We know of no reason why evidence of the entire contract could not have been shown. The rulings of the court sustaining the motion to strike and the rejection of the offered testimony in relation thereto were erroneous.

■ II. Defendant's second assigned error is that plaintiffs, having framed their petition on the theory that the relation of bailor and bailee existed between themselves and defendant, had the burden of proving negligence, and failed to meet the burden. The case was tried on the theory that a presumption was created by the delivery of the airplane in good condition to the defendant and its return in a damaged condition which, with nothing else, would create a presumption of liability on the part of the defendant, but when evidence was offered which tended to show that the injury to the plane was not due to the negligence of the defendant, it was then the duty of the plaintiffs to go forward with other testimony showing negligence. The rule as to bailments is given in the case of Reimers v. Petersen, 237 Iowa 550, 554, 22 N. W. 2d 817, 820. This rule is:

"* * * when the bailed property is destroyed the presumption that the loss arose from bailee's lack of care is overcome when it is shown to have occurred through the operation of forces over which the bailee had no control, and it then becomes incumbent on the bailor to disprove the asserted cause of loss or

to show that the bailee's want of care co-operated with the destroying cause." Citing Hunter v. Ricke Bros., 127 Iowa 108, 102 N. W. 826.

See also Gibbs v. Farmers & Merchants State Bank, 123 Iowa 736, 99 N. W. 703; Brogan v. Lynch, 204 Iowa 260, 214 N. W. 514, and cases cited; In re Estate of Wiese, 222 Iowa 935, 270 N. W. 380; Walters v. Sanders Motor Co., 229 Iowa 398, 294 N. W. 621.

The court told the jury in instruction No. 8 that if the plane was delivered in good condition to defendant and returned in a damaged condition, a presumption arose that the damage had occurred by reason of the negligence of the defendant; that the plaintiffs would be entitled to recover so far as the matter of negligence is concerned unless the defendant rebuts or overcomes the presumption of negligence by showing that such damage occurred by reason of forces beyond his control; that if the jury found "that the damages were caused by forces or conditions beyond the defendant's control, then you should return a verdict for the defendant, unless you find that the negligence on the part of the defendant co-operated with the cause of the damages; that if you so find, you should return a verdict for the plaintiffs."

In the absence of other evidence a presumption makes a prima facie case, but the burden of proof does not shift. If explanation is made by the testimony of the defendant it then devolves upon the plaintiff to show that injury to the place is due to the failure of the bailee to use such degree of care of the property as under the circumstances the law requires, and the final burden is upon the bailor to prove negligence, not upon the bailee to show due care. Sanborn v. Kimball, 106 Maine 355, 76 A. 890, 138 Am. St. Rep. 345, and cases cited.

We doubt if this instruction gives sufficient emphasis to the rule that the burden remains throughout upon the plaintiff. It is, of course, for the jury to determine the care or the absence of care on the part of the bailee, but the bailee is entitled to have the rule as to burden of proof fully shown. We would not reverse for this reason alone but call attention to it here.

III. During the course of the trial defendant offered two

instructions, the first of which was, in substance, that it was the duty of the plaintiffs, as the owners of an airport, to keep the runways reasonably clear from obstructions and if there were any obstructions thereon it was the duty of the plaintiffs to place warning signs. The court refused—one of the grounds of refusal being that the matter contained in the instruction was not pleaded.

The court was in error in holding that the instruction should be refused. In addition to the grounds given the court held that the requested instruction did not state the law. Paragraph 4 of defendant's answer did explicitly plead the substance of the matter in the requested instruction. The instruction (No. 9) given by the court on the subject, referred to the claim of the defendant, but was followed by the latter part of instruction No. 9 which stated, after reciting the claim of the defendant:

"You are instructed that you are entitled to take into consideration all of the facts and circumstances as shown to you and proven in this case, and if you find that the defendant has overcome the presumption of negligence as explained to you in another instruction, and has shown to you that the damages were caused by circumstances and conditions not within his control and not by reason of his own negligence, co-operating therewith, then you should find for the defendant."

Defendant was entitled to a more explicit instruction on the duties of the bailor than was given in the court's instruction, instead of the general instruction given in instruction No. 9, especially when requested. The defendant had introduced testimony as to the condition of the airport. If true, it was one of those circumstances and conditions not within the defendant's control, referred to in general terms in the instruction, and the jury had a right to consider the duties of the bailor.

In providing the airport for the rental of the plane it was the duty of the plaintiffs to provide a safe runway in the same manner that it was their duty to provide a safe machine, since the rental use of a plane is of no value unless there are safe means provided for using it. The duty of the keeper of an

airport, like the duty of one who keeps automobiles for rental, is to provide a safe means of exit or other means for use.

"A public airdrome proprietor is obliged to see that the airport is safe for aircraft and to give proper warning of any danger of which he knows or ought to know, and he is liable to the owner of a plane for damage sustained by reason of a violation of this duty. In particular, the owner of an airport has a duty to keep the runway free from obstructions, so far as possible, or to place markers warning pilots of danger." 6 Am. Jur., Aviation, section 14, page 11.

See also Peavey v. City of Miami, 146 Fla. 629, 636, 637, 1 So. 2d 614, 617.

Other questions raised by the defendant need not be considered here as they may not arise upon a subsequent trial if there should be such. For the reasons stated the cause should be reversed.—Reversed.

MANTZ, C. J., and BLISS, GARFIELD, SMITH, WENNERSTRUM, and MULRONEY, JJ., concur.

HAYS, J., takes no part.