CRAWFORD LUMBER COMPANY, a corporation, appellant, v. ABSTRACT GUARANTY COMPANY, a corporation, appellee.

No. 50557.

MARCH 6, 1962.

Ross, Johnson, Stuart, Tinley & Peters, of Council Bluffs, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellee.

THOMPSON, J.—The facts in the case before us are not in dispute. Plaintiff's action at law is based on its contention that it took title to real estate in Council Bluffs, paying certain considerations therefor in reliance upon an abstract of title certified by the defendant, which was in the business of furnishing such abstracts; and that the defendant omitted to show a judgment which was a lien upon the title, so that the plaintiff was later compelled to satisfy it. The case was tried to the court without a jury, and resulted in a judgment for the defendant.

It appears from the record that prior to May 9, 1957, the plaintiff, which is an Iowa corporation engaged in the building material business, furnished certain materials for the construction of a residence for Stewart A. Carlson and Evelyn I. Carlson, husband and wife. On the date named the Carlsons were indebted to the plaintiff in the sum of $3771.78, and it filed its mechanic's lien claim for that amount.

Late in 1957 Edward C. Evans, president of plaintiff-company, had some conversations with Stewart A. Carlson with reference to disposition and settlement of the Carlsons' indebtedness. At that time there was a mortgage on the property, held by the Equitable Life Assurance Society of the United States; there were delinquent and current real-estate taxes, and delinquent federal tax liens against the real estate in addition to the plaintiff's mechanic's lien claim.

After some further negotiations between Evans and Carlson, it was agreed that all matters would be settled by the Carlsons

conveying the property to the plaintiff, in return for which plaintiff would assume the Equitable mortgage; pay all delinquent tax claims and assume current taxes; and release its mechanic's lien. Carlson gave the plaintiff a statement showing these items and representing that they constituted all liens against the property. Plaintiff's employees checked the liens and found they agreed with Carlson's information.

About January 14, 1958, the Carlsons conveyed the property to plaintiff, subject to the liens stated; and the deed was recorded on that date. At that time plaintiff had paid none of the liens and had not satisfied the mortgage. Its only expense had been the sum of $23.10 for revenue stamps on the deed and the recording fee. On January 16, next, Donald P. Baird, an attorney practicing in Council Bluffs, called Mr. Evans and, as Evans testified, said to him: "Didn't you know about the judgment that Cohoe Lumber has against Stuart Carlson? * * * Don't you realize that that would be a lien on the property?" It also appears without dispute that Baird advised Evans of the approximate amount of the judgment, which was in the amount of $1717.62, with interest and costs. This judgment had been entered on September 10, 1957, in the District Court of Pottawattamie County, in favor of Cohoe Lumber and Supply Company and against Stewart A. Carlson.

Mr. Evans at once notified his attorney, who advised that the abstract of title to the property should be secured from the mortgage holder and extended to date to show the actual situation as to title and liens. Accordingly the abstract was procured and delivered to the defendant for extension and certification. On February 12, 1958, the abstract was certified and returned. The certificate was in the usual form, certifying that the abstract as extended was correct and showed all matters of record affecting the title, including, among many other things, unsatisfied judgments. The Cohoe Company judgment was not shown, evidently through an omission of the abstractor.

Thereafter, the abstract having been examined by an attorney, the plaintiff proceeded to satisfy the Equitable mortgage, in the sum of $11,799.94; to pay and satisfy state and federal tax liens amounting to nearly $1000; and to release and satisfy its

mechanic's lien. Some months later execution was issued on the Cohoe judgment, and plaintiff was compelled to pay it, in the sum of $1977.43. It is this amount, with costs including attorney fees, which plaintiff seeks to recover in the action before us.

I. It is well settled that the liability of an abstractor of titles is based on contract; and that one who undertakes to furnish such abstracts is liable for a failure to use ordinary care in so doing. His contract is that he will exercise such care. Young v. Lohr, 118 Iowa 624, 626, 92 N.W. 684, 685. There can be no doubt that the defendant did not exercise such care in the instant case. But the decisive question is whether the plaintiff had a right to rely upon the abstractor's certificate as showing the real situation. The trial court found that the plaintiff had actual knowledge of the Cohoe judgment before it expended any moneys in clearing the title to the property, did not rely upon and had no right to rely upon the abstractor's mistake, and may not take advantage of it. The plaintiff insists that it did in fact rely upon the abstractor's extension of the abstract and its certificate and, so relying, suffered damage. Its position is that, although it was admittedly advised of the Cohoe judgment, it nevertheless expected the abstract to show whether such a judgment in fact existed, or was a lien on the real estate, and that it accepted the abstract as correct and proceeded accordingly.

II. That the trial court sitting as trier of the facts as well as of the law cannot be reversed by the appellate court as to its findings of fact if there is substantial evidence to support them is so well settled that no citation of authority is needed. The essential facts here are not in dispute. Our problem is to determine whether these facts, with the proper inferences that may be drawn from them, do in fact warrant the findings made within the limits of the rule set forth immediately above.

We have made a distinction between "knowledge" and "actual notice". In Millowners Mutual Life Insurance Co. v. Goff, 210 Iowa 1188, 1193, 232 N.W. 504, 506, we said: "There is a distinction to be made between knowledge and 'actual notice'

in cases of this kind. While one having knowledge would be charged with actual notice, yet it does not require full knowledge of the matter, when one is sought to be charged with notice, in order to constitute 'actual notice' within the meaning of the law. If the facts and circumstances are such as to lead a reasonably prudent man to make inquiry which, if prosecuted with ordinary diligence, would result in ascertaining the truth, this is sufficient to constitute 'actual notice'." Many authorities are cited.

In United States v. Cedar Valley Livestock Exchange, D. C., N. D. of Iowa, 169 F. Supp. 169, 179, after citing with approval the holding in the Millowners Mutual Life Ins. Co., case, supra, the court remarked: "Thus 'actual notice' includes what could be termed 'inquiry notice.'"

Also of importance in determining whether the inferences that may properly be drawn from the admitted evidence in the case before us support the trial court's judgment is a statement in Young v. Lohr, supra, loc. cit. 118 Iowa 628, 92 N.W. 685. This was a suit for damages because of a defective abstract furnished by the defendant. Apparently it was submitted to a jury, with the result that a judgment was rendered for the plaintiff. This court said: "True, the plaintiff was bound to know that execution might issue on the judgment against him, and his property be sold to satisfy it, but this contention only strengthens his claim that he was deceived and misled to his injury by the defective abstract; *the question of his own negligence being another matter, and for the jury to determine.*" (Italics supplied.)

Young v. Lohr is much relied upon by the plaintiff, and we are told it "points the direction for decision in this case." But as we read the italicized language in the quotation set forth above, it means there was a jury question—a question for the determination of the trier of the facts—whether the knowledge, or actual notice, of the plaintiff was sufficient to support a holding that he had no right to rely upon the defendant's mistake.

 The evidence in the case before us shows that the plaintiff was specifically told, on January 16, of the Cohoe judgment, of its approximate amount, and warned that it was a lien on

the premises which were being conveyed to it. The abstract was certified to February 12 next, some 27 days after the plaintiff was alerted to the encumbrance of the judgment. It is true the judgment might have been satisfied in the meantime, or the attorney who told the plaintiff's president of it might have been mistaken in his assertion it was a lien on the property. However, it is evident that the Carlsons were in financial difficulties, and it is a fair inference they were not in a position to pay any substantial judgment against them. Although both the plaintiff and its attorneys were specifically advised of the Cohoe judgment before it had paid out any sums or satisfied its mechanic's lien claim, it proceeded without any inquiry as to the judgment. We think there was sufficient substantial evidence to support the trial court's findings that the plaintiff had actual notice, in fact, even knowledge, of the unsatisfied judgment and so of the abstractor's omission. Consequently there was a jury question as to whether it relied on the abstract to its detriment; and this being so, we cannot interfere.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part, and BLISS, J., not sitting.