Charles **NAXERA**, Appellee,

v.

Jim L. **WATHAN**, Appellant.

No. 52769.

Supreme Court of Iowa.

June 11, 1968.

William R. Shuttleworth, of Shuttleworth & Ingersoll, Cedar Rapids, for appellant.

Donald E. Smith of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellee.

MASON, Justice.

This is a law action tried to the court in which plaintiff Naxera seeks recovery for damage sustained to his lightweight "Taylorcraft" airplane.

Defendant Wathan, operator of an airplane parking ramp service adjoining Cedar Rapids Municipal Airport, offered storage, maintenance and tie-down services for aircraft on his ramp. Under the facilities offered, plane owners tied their planes to the ramp with ropes furnished by defendant for a monthly storage fee of $7.50. In July 1958 plaintiff delivered his plane, in airworthy condition, to defendant's ramp for storage under a bailment arrangement. It remained in defendant's possession and control under this bailment until September 3 when the damage occurred. About 6:48 p.m. a tie-down rope furnished by defendant

broke during a storm accompanied by high wind gusts, plaintiff's plane was overturned and damaged beyond repair.

There was another airplane, a Piper Cruiser, overturned, but this was not due to rope breakage. The rope held, but the wind pulled the strut fittings out of the aircraft. The manufacturer of the Piper builds it intentionally so the fittings will pull loose in severe winds.

None of the six or seven other planes tied on this ramp were broken loose or damaged. Plaintiff's tie rope was the only one broken.

I. Plaintiff alleged a bailment for hire, specific negligence in failing to provide strong and sound ropes and in failing to inspect and discover their condition and manner in which the plane was secured; as a proximate result of defendant's negligence plaintiff's plane was damaged.

Defendant in answer admitted the bailment, damage to plaintiff's airplane while on defendant's premises, but denied negligence, contending he had used due care to prevent the loss; and pleaded as an affirmative defense the sole proximate cause of plaintiff's damages was due to an unusual and unanticipated Act of God.

The parties stipulated plaintiff was the owner of the airplane as alleged in his petition; that since July plaintiff's plane had been parked and stored on defendant's ramp with facilities furnished by defendant under a bailment arrangement; at the time of delivery to defendant plaintiff's plane was in good airworthy condition; and while plaintiff's plane was bailed to defendant, parked and tied down on his ramp, it was damaged in a storm.

The affirmative defense relied on by defendant as an unusual, unanticipated and indefensible Act of God is described as a light rain commencing about 6:40 p. m. accompanied by lightning and some wind, but nothing unusual. The peak of the thunderstorm came somewhat later accompanied by thunder, lightning, heavy rains, winds and clouds which darkened the area. It passed over the ramp where plaintiff's plane was stored, moving generally from west or northwest to east. The intense period of the storm was brief, lasting about 10 minutes and "was over almost as soon as it got there." By 6:55 the storm passed and the wind had died down.

There was one eyewitness, a "lineman" employee of defendant, who established the damage to plaintiff's plane occurred during this period of peak intensity.

At the time of the storm the Federal Aviation Agency maintained a weather reporting station at the Cedar Rapids Municipal Airport. A certified copy of the official weather bureau log for September 3 was offered in evidence. This indicated gusts peaking to 70 knots or a wind velocity of 80.6 miles per hour at 6:48 p. m.

We are told a distinction is made between "wind" and "gusts." Winds have a direction, constant or average velocity and continuous duration. Gusts have no one direction as they hit from all directions and are of short duration.

The parties stipulated the court might take judicial notice of the Beaufort Wind Scale classifications. This scale tries to classify winds at various forces and compare these forces to the effect on terrain. It classifies winds of 73-82 miles per hour as a hurricane with devastation occurring. However there was little or no evidence of any devastation this night by reason of the winds or evidence of any damage of consequence to buildings, trees or other such property.

II. The trial court found the damage to plaintiff's plane was caused by both the high wind and the deteriorated or worn condition of the rope itself; defendant was negligent in failing to provide a good quality rope to tie down plaintiff's plane which was a proximate cause of the damage; defendant failed to establish by a preponderance of the evidence the damage would have occurred even though defendant were not negligent, which means defendant failed

to establish the Act of God as the sole proximate cause of plaintiff's damages. He held for plaintiff.

Defendant appeals from judgment for plaintiff of $1220.62. His assignments of error present the questions whether there was substantial evidence to support the trial court's findings, and whether the court erred in its application of the doctrines of proximate cause, duty of care and burden of proof to an airport bailment case.

III. This being a law action tried to the court, it is reviewable on errors assigned and is not triable de novo here. Rule 334, Rules of Civil Procedure. The evidence will be viewed in the light most favorable to plaintiff—this is also the light most favorable to the trial court's judgment. The trial court's findings of fact have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, they are binding on us and the judgment will not be disturbed on appeal. Citation of authority is unnecessary. Rule 344(f) (1), R.C.P.

Our problem is to determine whether these facts, with the proper inferences that may be drawn from them, do in fact warrant the findings made within the limit of the rules hereinafter set forth. We will not weigh the evidence or pass on the credibility of witnesses. Crawford Lumber Co. v. Abstract Guaranty Co., 253 Iowa 705, 708, 113 N.W.2d 703, 705; Iowa Mutual Insurance Company v. Combes, 257 Iowa 135, 138, 131 N.W.2d 751, 752; and Zach v. Morningstar, 258 Iowa 1365, 1368, 142 N.W.2d 440, 442.

However, we may find error if the trial court applied erroneous rules of law which materially affect the decision. France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270.

IV. Defendant contends the trial court erred in imposing the burden of proof. He argues the court as a practical matter held defendant accountable not as a bailee but under strict liability and virtually without fault by subjecting him to an unknown presumption of negligence which could be escaped only by affirmatively disproving negligence, and affirmatively establishing an intervening Act of God as the sole proximate cause of the loss.

He contends in a bailment case, as here, there are five stages in the proof: (1) bailor establishes the bailment and loss; (2) at this point a rebuttable presumption arises that bailee did not exercise due care and bailee is subjected to a procedural burden of coming forward with a showing or explanation of the loss consistent with freedom from negligence; (3) if such showing is made the bailor then has the burden of proof to establish specific negligence and proximate cause by preponderance of the evidence and at this juncture bailee can contend an Act of God caused the loss or that he was not negligent without having the burden of proof to disprove negligence or to establish his affirmative defense in order to escape liability; (4) if plaintiff fails to carry his burden and the issues are in equipoise, defendant prevails; (5) if plaintiff establishes negligence and proximate cause, defendant, in order to escape liability must then establish his affirmative defense and at this stage he does have the burden of proof to so establish it.

In support of this contention defendant asserts the court erred in not considering the second, third and fourth of these steps and in proceeding directly from step one to five. He argues although plaintiff did make a prima facie case by proving the bailment and damage, this does not mean any substantive burden of disproving negligence or establishing an affirmative defense devolved upon defendant. In further argument he emphasizes that only the purely procedural burden of "going forward" with some explanation of the loss consistent with due care shifted to him. This showing, if made, rebuts any presumption of negligence and plaintiff must thereafter establish negligence and proximate cause by a preponder-

ance as in the ordinary liability case since the substantive burden of proof never shifts.

Plaintiff on the other hand contends the court properly placed the burden of proof upon defendant in the first instance to support his affirmative defense that an Act of God was the proximate cause of plaintiff's damage and held that if the sole proximate cause of injury was an Act of God, plaintiff could not recover even though defendant's negligence was established; that when defendant had made a showing the sole proximate cause of plaintiff's injury and damage was an Act of God the burden of proof was then on plaintiff either to disprove the injuries were caused by an Act of God or to show defendant's want of care cooperated with the Act of God.

These contentions raise the question as to who has the burden of proof in a bailment case to show the Act of God was the sole proximate cause of plaintiff's damage.

In Wagaman v. Ryan, 258 Iowa 1352, 1361–1362, 142 N.W.2d 413, 418–419, a suit seeking recovery for personal injuries resulting from an automobile collision, we considered an instruction given by the trial court bearing on the affirmative defense of Act of God. There we said "[i]t [instruction 13] properly places the burden on defendant to prove its occurrence and that it was the sole proximate cause of plaintiff's injuries." This instruction told the jury: "The burden of proof is upon defendant to establish by a preponderance of the evidence the following propositions: (1) That the Act of God in fact occurred. (2) That said Act of God was the sole proximate cause of plaintiff's injuries and damage." It then defined Act of God substantially as approved in Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 454, 138 N.W.2d 93, 98, 10 A.L.R.3d 247.

■ Ordinarily a party relying on an Act of God as a defense in a negligence case has the burden to plead and come forward with proof of its occurrence and that it

was the sole cause of injury. Young v. Marlas, 243 Iowa 367, 376–377, 51 N.W.2d 443, 448. See also McMaster v. Hutchins, 255 Iowa 39, 47–48, 120 N.W.2d 509, 513–514. Cases from other jurisdictions supporting this statement are Bachman Chocolate Manufacturing Company v. Lehigh Warehouse & Transportation Company, Inc., 1 N.J. 239, 62 A.2d 806, 808; Oklahoma City v. Tarkington, 178 Okl. 430, 63 P.2d 689, 690; Schweiger v. Solbeck, 191 Or. 454, 230 P.2d 195, 200, 29 A.L.R.2d 435; Yenchko v. Grontkowski, 385 Pa. 272, 122 A.2d 705, 706; and Tope v. King County, 189 Wash. 463, 65 P.2d 1283, 1287.

We have been cited no cases nor have we found any where we have made this specific pronouncement in a bailment case. However we see no basis for applying a different rule to such a case.

In City of Enid v. Reeser, Okl., 355 P.2d 407, a suit for damages to an airplane, plaintiff had alleged that under a rental agreement with defendant, he stored his airplane in defendant's municipal hangar and while in storage, the airplane was destroyed, whereby plaintiff was damaged.

Defendant admitted it rented space in the hangar and alleged it used ordinary care for the protection of the airplane and the sole and proximate cause of the damage to the airplane was an Act of God consisting of a sudden, extraordinary and unprecedented wind.

It was stipulated the suit was based upon a contract of bailment for hire; the plane was owned by plaintiff; it was stored on the date of the storm in defendant's hangar in space rented therein and the rent was paid; the plane was damaged and the claim filed for the damage was denied by defendant.

From a verdict for plaintiff, defendant appealed. Affirming the trial court's refusal to grant defendant's motion for a directed verdict, the Court said, "The burden of proving the affirmative defense of an Act of God was upon defendant." As

tending to support this statement see City of Jackson v. Brummett, 224 Miss. 501, 80 So.2d 827, 829; Alamo Airways, Inc. v. Benum, 78 Nev. 384, 374 P.2d 684, 686, and citations; Shephard v. Graham Bell Aviation Service, 56 N.M. 293, 243 P.2d 603, 604; and Clack-Nomah Flying Club v. Sterling Aircraft, Inc., 17 Utah2d 245, 408 P.2d 904, 905; all involved claims for damage to airplanes from windstorms while bailed to defendant. Other authorities considering burden of proof in bailment cases are collected in an annotation in 17 A.L.R.2d 913, 921, and in Later Case Service covering this volume.

■ We now hold a defendant who relies on an Act of God as an affirmative defense to an action brought by a bailor for damage sustained to his property while bailed to defendant has the burden of pleading and proving its occurrence and that it was the sole proximate cause of plaintiff's injury and damage.

Defendant's contention the trial court erred in imposing the burden of proof is without merit.

■ As previously noted, the stipulation that defendant was a bailee for hire and plaintiff's plane delivered in airworthy condition was damaged while in defendant's possession and control gives rise to a presumption the damage was due to defendant-bailee's lack of care. This with proof of amount of loss made a prima facie case for plaintiff. Walters v. Sanders Motor Co., 229 Iowa 398, 400, 294 N.W. 621, 622. The bailee must then go forward with his proof to rebut this presumption or prima facie case by showing the damage occurred through something consistent with due care on his part in which case he is entitled to the verdict, unless the bailor sustained his burden of proof with evidence either to disprove the asserted cause of loss or make it appear a want of ordinary care on the part of the bailee cooperated with such destroying cause. Hunter v. Ricke Bros., 127 Iowa 108, 111, 102 N.W. 826, 827, and citations;

Walters v. Sanders Motor Co., supra; Reimers v. Petersen, 237 Iowa 550, 554–555, 22 N.W.2d 817, 820; and Stevenson v. Reimer, 240 Iowa 652, 656, 35 N.W.2d 764, 766. Or, as said in some of our cases, that the loss would not have occurred but for the negligence of the bailee. Jones v. O'Bryon, 254 Iowa 31, 38, 116 N.W.2d 461, 465, and citations.

·· This is so even though the burden of proof of the cause of action rests with plaintiff and never shifts from him. Hunter v. Ricke Bros., supra, 127 Iowa at 111, 102 N. W. at 827; Reimers v. Petersen, supra, 237 Iowa at 555, 22 N.W.2d at 820; and Stevenson v. Reimer, supra, 240 Iowa at 657, 35 N.W.2d at 767.

■ Defendant does not contend plaintiff did not make a prima facie case by showing the bailment and his loss. The requirement was then upon defendant to meet the presumption of lack of due care and proximate cause by a showing that such injury or loss occurred through the operation of forces not within his control—defendant's suggested second stage, supra. The court then placed the burden on plaintiff to either (1) disprove the alleged cause of loss or (2) show that bailee's want of care cooperated with the destroying cause as a proximate cause of his damage—defendant's third suggested stage, supra. Of course, there may be more than one proximate cause of an injury. Lockwood v. Wiltgen, 251 Iowa 484, 490, 101 N.W.2d 724, 728, and citations; Davidson v. Cooney, 259 Iowa 1278, 1284, 147 N.W.2d 819, 823.

This procedure correctly follows the rules set forth starting with Hunter v. Ricke Bros., supra, and in cases following it. The trial court did not apply an erroneous rule of law in finding plaintiff had carried the burden imposed upon him. ·

V. We turn to the question whether there was substantial evidence to support the trial court's findings. All of defendant's inside hangar tie-down spaces were already filled when plaintiff's plane was

brought over, and along with an estimated five to eight other planes it was tied outside on defendant's open ramp or strip of grass. The planes were affixed by ropes or chains to two cables which were permanently anchored in concrete at each end and at intervals, and which ran parallel along the ground in a northwest-southeast direction. When tied down, aircraft were placed at right angles to the cables and were facing southwesterly. At the time of the storm, plaintiff's and the other aircraft were tied down facing southwesterly in accordance with this practice. The wind which damaged plaintiff's aircraft came from the west-northwest. Plaintiff's plane was at the far east end of the ramp.

These cables constituted a "line" and the planes, including plaintiff's, were set so that the two wings were tied to the front or most southwesterly cable and the tail to the other.

Plaintiff's aircraft was equipped with a metal ring or buckle affixed to each wing strut. Oblong "rings" of similar size but actually two pieces of chain spliced together were installed around the cables. In the normal tie-down manner, one end of each wing rope was tied to the wing ring, the other through the cable ring. The excess length after insertion through the opening was tied into half-hitch knots. The ropes had metal "pig" rings around each end to prevent fraying or unraveling. Plaintiff's plane was tied down with three-strand manila rope, ⅝" in diameter on the right wing, ¾" on the left wing and ½" on the tail tie. Although the ropes were pulled fairly taut, there was some slack because of the cable.

When defendant left the airport around 5:00, he knew there were thunderstorms in the area. He wasn't positive whether he had gotten a weather warning from the FAA prior to or around 5 p. m., but testified, "We wouldn't need a warning on that type of thunderstorm, as we could see it coming."

When defendant's "lineman", James Lorimer, reported for work about 5 p. m., defendant was still there. Lorimer talked to the man he was relieving to get some idea of what had been done to fuel the planes. He definitely knew a storm was expected and followed his normal routine duties this night in checking planes in the hangar and those on the ramp for fuel as he took the gas truck down the ramp line. In doing so he looked at the tie-down ropes and, in his best judgment, checked all the planes on the ramp. Although it had been raining since 6:00, Lorimer did not return to the hangar office until about 10 minutes before the wind hit. During a flash of lightning he saw from the office that plaintiff's plane and the Piper Cruiser were not tied down where they had been when the storm started. By the time he got out to make further examination, he could see that the two planes had been blown away in the storm. Another Taylorcraft plane on the line before the storm, somewhat heavier than plaintiff's, was still tied down. Lorimer immediately notified defendant of the damage.

From the time plaintiff's plane was brought to the hangar until the date of the storm, Lorimer estimated he had probably checked its tie-down ropes five or six times and did not recall finding any defective ropes September 3.

Plaintiff first received a telephone call about 7:45 p. m. that his plane had been damaged. He immediately went to defendant's airport, observed that his plane was damaged, but due to darkness, could not determine the extent. Plaintiff returned to the airport about 7:45 a. m. the next morning, removed the tie-down ropes which were still attached to his plane and kept them in his possession until the trial. He testified they then had the same appearance as on September 4, 1958. The ropes were examined by Earl Wyatt.

Wyatt, an employee of a Cedar Rapids tree service engaged in clearing and trimming trees, was plaintiff's witness. Al-

though he had no special training of an academic or mechanical nature in rope structure and no experience in airplane tie-down ropes, he had been with the company 19 years constantly using ½″ and ¾″ manila rope for the safety of climbers and letting tree limbs down. This involved his daily inspection of the ropes to observe effects of weather, wear and tear and to discover flaws from use in his business.

Over defendant's standing objection that the question called for an opinion and conclusion of the witness, invited speculation even if the witness was qualified and, due to lapse of time, involved incompetent, irrelevant and immaterial matters, the witness was permitted to express the result of his inspection of the tie-down ropes in evidence.

Wyatt described the rope as old and, based on examination of the right wing rope attached to the ring which in turn was attached to the tie-down cable and the knot at the end thereof, identified as plaintiff's exhibits 9 and 10, expressed the opinion only the one strand was holding at the time of the storm, its tufted appearance indicating this strand had been pulled apart. In his opinion the other two strands had been cut or worn through by abrasive action on the ring caused by wind rocking the plane over a period of several weeks. From the manner in which the two strands were cut through and the stains thereon, he was able to identify which parts of the strands were against the ring and which were not.

■ Defendant's contention the court erred in overruling objections to the giving of opinion testimony by Wyatt as to the condition of the rope and the cause of its breaking is without merit.

"The courts and other authorities uniformly agree that the receipt of opinion evidence, whether lay or expert, and the extent to which it will be received in any particular case, are matters resting largely in the administrative discretion of the court. 32 C.J.S. § 449, p. 86; 1 Wigmore, Evidence, section 682, page 1092. Courts should be, and are, very loath to interfere with such discretion unless it has been manifestly abused to the prejudice of the complaining party. We have permitted opinion testimony in many cases on matters with which jurors might have some familiarity but where the witness because of his greater knowledge, experience and familiarity with the subject, might be of help to them." Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W. 2d 646, 654. See also Dougherty v. Boyken, Iowa, 155 N.W.2d 488, 491, and citations.

■ In the absence of special contract a bailee is held to the exercise of ordinary care in relation to the subject matter thereof. Although he is not an insurer, Hunter v. Ricke Bros., supra, 127 Iowa at 111, 102 N.W. at 827; Reimers v. Petersen, supra, 237 Iowa at 554, 22 N.W.2d at 820, the ordinary care applied to outdoor storage of a heavy truck would not be sufficient for outdoor storage of an airplane. Airplanes, due to their nature and construction, must be moored while not attended to prevent their movement, which could be expected to produce damage to the aircraft. Central Aviation Company v. Perkinson, 269 Ala. 197, 112 So.2d 326, 328. See also Alamo Airways, Inc. v. Benum, supra, 78 Nev. 384, 374 P.2d at 686, 687, where authorities applying the standard of ordinary care to bailment of airplanes are cited. All cases cited involved the sufficiency of the respective tie-down systems of defendant and all involved cases in which the aircraft was torn from its moorings by high winds.

■ In operating his storage and ramp tie-down service for aircraft, it was defendant's duty to his customers in the exercise of ordinary care to provide adequate facilities to protect their aircraft from damage while stored under a bailment for hire. This duty obligated defendant to supply a tie-down system of sufficient strength to

withstand the pressure of anticipated winds. Here defendant elected to furnish ropes as the method of safeguarding plaintiff's plane. He was bound to follow proper procedure in the use of these ropes in the knots used to make reasonably certain they would not become unfastened.

 Defendant asserts that the line inspection made by himself and Lorimer before the storm fulfilled this duty. A factual issue was created but defendant's burden was not sustained as a matter of law. In the absence of an admission by the adverse party, it is not often that a party having the burden of proof upon an issue establishes it as a matter of law. Frideres v. Lowden, 235 Iowa 640, 642, 17 N.W.2d 396, 397; Estate of Goeders, 260 Iowa 87, 148 N.W.2d 438, 442.

Defendant introduced data compiled from the permanent weather bureau records summarizing high wind velocities at his place of business from 1954 through September 1958. The velocity of 80.6 miles per hour on the day of the loss was the highest recorded during that period. He contends that even new ¾" manila ropes would not have withstood the force applied against them. The trial court found otherwise. As stated, we do not weigh the evidence.

 There is substantial evidence from which the trier of the fact could find defendant failed in his duty to protect against a forseeable danger, a high wind that he was aware of at least two hours before it hit. The trial court would be justified in finding that ropes of sufficient strength, whether from age or otherwise, and proper tying procedures were not used here.

The fact other aircraft on the same line with plaintiff's did not break away from their moorings as a result of rope breaking plus the fact the wind which damaged plaintiff's aircraft came from the west-northwest and plaintiff's plane was at the far east of the ramp indicates inadequate equipment or procedures were employed on plaintiff's plane. The fact there was little or no evidence of any devastation this night by reason of the winds or evidence of any damage to buildings, trees or other such property of any consequence is further support for the court's findings. See Young v. Marlas, 243 Iowa 367, 373–374, 51 N.W.2d 443, 447.

VI. Defendant's contention the court erred in its application of the doctrine of proximate cause is without merit.

"* * * In several recent decisions we have approved this from Restatement, Second, Torts, section 431: 'The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.'" Davidson v. Cooney, 259 Iowa 1278, 1283, 147 N.W.2d 819, 823; Van Aernam v. Nielsen, Iowa, 157 N.W.2d 138, 143. He argues a loss caused by a so-called Act of God must be met and overcome by plaintiff-bailor as a part of his burden of proof on the question of proximate cause even though the Act of God has not been established as an affirmative defense; that if his evidence of causation is given consideration on the issue of whether plaintiff established proximate cause of his loss by a preponderance, this evidence at the very least throws the question of causation into an equipoise—defendant's fourth suggested stage, supra.

 Generally questions of negligence and proximate cause are for the jury; it is only in exceptional cases they may be decided as matters of law.

"An issue may be proven by circumstantial evidence but this evidence must be such as to make the theory of causation reasonably probable, not merely possible, and more probable than any other theory based on

**522**

such evidence. Generally, however, it is for the jury to say whether circumstantial evidence meets this test. Rule 344(f)2, 10, and 16, Rules of Civil Procedure.

"It is not necessary in a civil case that circumstantial evidence be so clear as to exclude every other possible theory. [Citing cases] * * *

" * * *

" 'Nor will the fact that some other cause operates with the defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable in some material degree to his want of due care' " Citing Cases. Davidson v. Cooney, supra, 259 Iowa at 1282–1284, 147 N.W.2d at 822, 823.

Defendant's argument that facts cannot be established by an inference based on an inference was rejected in Soreide v. Vilas & Company, 247 Iowa 1139, 1143, 78 N.W. 2d 41, 44, where we said:

"We disagree with the contention defendants stress that an inference may not be based upon another inference or upon a fact the existence of which itself rests upon an inference. While some authorities use substantially the statement defendants urge upon us it is unsound and, like many other courts, we have rejected it. Inferences may legitimately rest on facts established by other inferences" (Citing authorities).

VII. Defendant's contention the court erred in failing to sustain his motion for enlargement and amendment of findings and for reconsideration and modification of judgment, and in the alternative for new trial cannot be sustained. The court did not err in applying any rule of law in formulating conclusions and arriving at its judgment. Houlahan v. Brockmeier, 258 Iowa 1197, 1205, 141 N.W.2d 545, 550, does not support defendant.

No error assigned entitles defendant to a reversal or new trial. The judgment is therefore—affirmed.

All Justices concur.