**TIPTON COUNTY ABSTRACT COMPANY, INC., Appellant (Defendant below),**

v.

**HERITAGE FEDERAL SAVINGS AND LOAN ASSOCIATION, Formerly Elwood Federal Savings and Loan Association, Appellee (Plaintiff below).**

**No. 2–680A178.**

Court of Appeals of Indiana, Fourth District.

Feb. 19, 1981.

Edward S. Mahoney and Jerry L. Angel, Lacey, O'Mahoney, Mahoney, Angel & Jessup, Kokomo, for appellant.

Richard L. Fairchild, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Wayne O. Wimmer, Elwood, Tom R. White, Christian, Waltz, White, Koltz & Free, Noblesville, for appellee.

CHIPMAN, Judge.

Tipton County Abstract Company, Inc. (TCAC) appeals from a judgment holding it liable to Heritage Federal Savings & Loan (Heritage) for failing to inform Heritage of an outstanding mortgage in a continuation of an abstract prepared by TCAC.

Two issues have been preserved[1] for appeal.

I. Whether there is sufficient evidence to support the judgment.

II. Whether the trial court erred by limiting TCAC's cross-examination of a witness.

On March 2, 1973 Heritage took a mortgage loan application from Kenneth M. and Jane Ann Bourff for a parcel of land located in DeHority's City Land Company's Addition. In the loan application the Bourffs revealed a $25,000 secured loan to Farmers Loan and Trust Company of Tipton (Farmers).

The abstract of the property was sent to TCAC to be continued from May 17, 1971 to March 12, 1973. TCAC found no liens except a previous mortgage of Heritage's and certified that, "We have carefully examined the Deed and Mortgage Records of said county, and that the foregoing continuation contains all of the conveyances and unsatisfied encumbrances effecting the title of said real estate described in the caption thereof."

The property was appraised by Heritage at $93,000. The Bourffs received a $70,000 mortgage on the property from Heritage.

On December 18, 1974 the Bourffs filed a bankruptcy petition. Farmers filed suit to foreclose a mortgage they had on the property, dated and recorded on February 18, 1972, and made Heritage a party defendant. That mortgage was not shown on TCAC's continuation of the abstract of the property. A decree of foreclosure was entered listing Farmers as first mortgagee and Heritage as second. Heritage purchased the property at Sheriff's sale on August 21, 1975 for $37,814.17 and sold it on March 25, 1976 for $63,000.

Heritage filed suit against TCAC alleging they were damaged by their failure to include Farmers' mortgage in the abstract. The trial court found TCAC was in breach of their contract by failing to list Farmers' mortgage and found the resultant damages to be $73,999.44.

## I. SUFFICIENCY OF EVIDENCE

TCAC contends Heritage had, at a minimum, constructive knowledge of Farmers' prior mortgage. Bourffs' loan application contained a reference to a $25,000 loan from Farmers secured by an unspecified second mortgage. TCAC contends Heritage should have made further inquiry into the matter. Thus they conclude Heritage had sufficient information to lead them to the discovery of the mortgage. Heritage contends they had no knowledge, constructive or actual, of Farmers' prior mortgage.

Clearly TCAC would be liable for damages caused by their breach of contract by supplying erroneous information in the abstract continuation. As stated in *Mayhew v. Deister*, (1969) 144 Ind.App. 111, 244 N.E.2d 448, 452:

> both issues are waived: the first for failure to cite authority on its brief. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); the second for failure to include it in its motion to correct errors. Trial Rule 50, Appellate Rule 8.3(A)(7).

---

1. TCAC discusses two additional issues in its brief: 1) whether Heritage was contributorily negligent in its appraisal; and 2) whether the damages are excessive since only one parcel out of three had a prior mortgage. However,

"The few relevant cases in Indiana demonstrate that the abstracter is liable to his employer for damages proximately caused by his failure to fulfil his duty, i. e., to use ordinary care and diligence in preparing the abstract. *Batty v. Fout*, 54 Ind. 482 (1876); *Brown v. Simms*, 22 Ind. App. 317, 53 N.E. 779 (1899); *Williams v. Hanly*, 16 Ind.App. 464, 45 N.E. 622 (1896); *Ohmart v. Citizens, etc. Trust Co.*, 82 Ind.App. 219, 145 N.E. 577 (1924). This duty is contractual.

'It is well settled that the liability of an abstracter of titles is based on contract; and that one who undertakes to furnish such abstracts is liable for a failure to use ordinary care in so doing. His contract is that he will exercise such care.' *Crawford Lumber Co. v. Abstract Guaranty Co.*, 253 Iowa 705, 113 N.W.2d 703, 704 (1962).

Although Indiana courts have not so directly ruled, this general duty and liability should be supplemented with the proposition that the employer must be damaged by his acting on reliance that the abstract is true and complete."

■ The abstracter, however, could not be liable for damages caused by factors other than his breach.[2] It is axiomatic that a breaching party is only liable for losses caused by his breach, *see* J. Calamari & J. Perillo, The Law of Contracts § 205 (1970). Such damages include those caused by the plaintiff's reliance on the abstracter's breach. As stated in 1 Am.Jur.2d, *Abstracts of Title* § 19 (1962):

"The abstracter is not liable for losses incurred otherwise than in reliance on the abstract. However, the person employing the abstracter has the right to rely upon the truth and accuracy of the abstract as regards essential facts of record, unless it is plainly apparent from the certificate that there was a mistake. He does not, by so relying upon the work of the abstracter, defeat recovery for negligence. [fn. 17 . . . . 'The defendant,

having assumed to search and report upon the title, the very purpose of obtaining its services would be undone if the plaintiff could not rely upon the truth and accuracy of its report as regards essential facts of record, unless perhaps the terms of the certificate made it plainly apparent that there was a mistake.' *Brideport Airport v. Title Guaranty & T. Co.*, 111 Conn. 537, 150 A. 509, 71 A.L.R. 345]"

■ In Indiana, in fact, it is not clear that even *actual knowledge* of an abstracter's breach negates recovery if the plaintiff relied on the abstracter's error. It is clear, though, such question (whether the plaintiff relied upon an abstracter's work to its detriment) is one of fact.

"The Supreme Court of Iowa in the *Crawford Lumber Co.* case, supra, so held . . . and stated at page 705 of 113 N.W.2d that it was:

'A question for the determination of the trier of the facts—whether the knowledge, or actual notice, [of abstracter's omission of an unsatisfied judgment] of the plaintiff was sufficient to support a holding that he had no right to rely upon the defendant's mistake.'

See also, *Randall v. Paine-Nichols Abstract Co.*, 205 Okl. 430, 238 P.2d 319, 28 A.L.R.2d 887 (1951). These cases indicate further that knowledge of a defect does not always and in every case automatically negate reliance upon the abstract. In the *Crawford Lumber Co.* case, supra, the court found that there was sufficient substantial evidence to support the finding that the plaintiffs had actual knowledge of the unsatisfied judgment and of the abstracter's omission of it, but stated further that there was therefore a jury question as to whether the plaintiff relied on the abstract to his detriment."

*Mayhew v. Deister* (1969) 144 Ind.App. 111, 244 N.E.2d 448 at 452.

---

2. The parties here refer to other possible causal factors as "contributory negligence." We prefer to deal with the issue in terms of causation since the gist of TCAC's argument is that although they breached their contract the damages Heritage suffered were caused not by that breach but by Heritage's own actions in giving the Bourffs a mortgage.

██ Heritage's knowledge, actual or constructive, of the prior mortgage is irrelevant if they in fact relied on TCAC's representation that it did not exist. Thus, the gist of TCAC's issue must be whether there is sufficient evidence to support the trial court's finding[3] that Heritage relied on TCAC's error in granting Bourffs the mortgage.

██ During direct examination of Curtis Mayfield, Vice-President of Heritage, the following exchange occurred:

"Q Did the Plaintiff association here depend on the abstract furnished by the Defendant corporation here in making this loan?

A I didn't hear the first part of your question.

Q Did the association depend on the abstract?

A We did.

[objection, overruled]

Q And what was the custom and the practice in the association regarding having abstracts?

A To have it continued to see if there are any other liens or encumbrances on the subject property other than our own and if it's clear then we proceed with the loan.

Q Was it practice to rely entirely on the abstract?

A Yes sir.

Q And did you rely entirely on the abstract in making this loan?

A Yes sir."

During direct examination of Patricia Huntsinger, supervisor of Heritage's loan department, the following exchange occurred:

"Q Uh, what is the custom in the association as to uh, how much dependency put in an abstract?

A When you're setting up a loan you depend on that abstract to tell you if there's anything outstanding against either the applicant or the property.

Q And uh, is there any other way that they depend on seeing whether there's any encumbrances or any breaks in the title other than an abstract?

A Not to my knowledge."

Clearly this is sufficient to support the trial court's finding that Heritage relied on TCAC's omission to its detriment.

## II. LIMITATION OF CROSS–EXAMINATION

TCAC contends the trial court committed reversible error when it refused to allow cross-examination of Patricia Huntsinger on the purpose of credit reports. The trial court ruled that the issue was outside the scope of direct examination and therefore an impermissible area for cross-examination.

██ Contrary to TCAC's assertions in Indiana cross-examination is limited to the scope of direct examination, e. g., *Howard v. State*, (1976) 256 Ind. 503, 355 N.E.2d 833.[4] But "when a given subject is opened up on direct examination, cross-examination may go into any phase of that subject which tends to modify, explain, or rebut the statements made on direct examination." *Forth v. Forth*, (1980) Ind.App., 409 N.E.2d 1107, 1112. Thus, cross-examination is not limited to only those parts of a subject matter which were specifically included in

---

**3.** The trial court made the following findings of fact:

"5. That the Plaintiff's mortgage loan to the Bourffs was made in the belief that the Plaintiff's mortgage would be a first and senior mortgage."

"10. That had the Plaintiff known of the prior mortgage to the Farmers Loan and Trust Company, said Plaintiff would not have made the mortgage loan on the real estate described in said mortgage."

**4.** We note however that a contrary rule was expressed in *Robertson v. State*, (1974) 262 Ind. 562, 319 N.E.2d 833, 836:

"A witness may be cross-examined not only as to his own testimony on direct examination, but also as to all matters within his knowledge which are pertinent or material to the case."

although this case has not as yet been cited for this proposition.

the direct examiner's questioning. *Wofford v. State*, (1979) Ind., 394 N.E.2d 100. The determination of whether cross-examination question is permissible is left within the discretion of the trial court and will only be reversed upon a showing of clear abuse of that discretion. *Brandon v. State*, (1979) Ind., 396 N.E.2d 365.

TCAC contends the following underscored passage of direct examination is sufficient to make the subject of credit reports permissible cross-examination (the remainder of the passage is included *for* clarity and context):

"Q And what are your duties?

A My duties are overseeing the loan department presently, taking loan applications, uh, various and sundry things. At the present time I'm on the loan committee.

Q And uh, what, uh, what is the procedure and custom in the association when a loan application has been granted, where do you go from there?

A <u>Once the loan application has been granted, the applicant is notified with a letter of commitment, the abstract is sent for continuation, and when it returns it's sent to the attorney for opinion and all things being equal, in other words, there's nothing that needs to be clarified on the abstract, then the loan is set for closing.</u>

Q And uh, on the loan here in question to Ken Bourff do you remember that loan?

A I set the loan up, yes.

Q You didn't have anything to do with taking the application?

A No sir, I did not.

Q And when they, when the abstract came back then and was ready to close you set the loan up for closing?

A Yes I did.

Q And uh, did you close the loan?

A No I did not."

We perceive that the direct examination pertained to procedures *after* a loan had been granted, especially the use of an abstract. The excluded evidence concerned the use of credit reports, i. e., procedures and factors used in the determination of granting a loan. We cannot say that the bank's use of credit reports is a phase of the direct examination subject: procedures used after a loan had been granted; nor that the former subject would tend to "modify, explain or rebut the statements made on direct examination." *Forth v. Forth, supra* at 1112. Clearly the trial court did not abuse its discretion by excluding questions concerning the use of credit reports from cross-examination.

Finding no reversible error, we affirm the trial court.

YOUNG, P. J., and MILLER, J., concur.