TERRY WAYNE WALKER *v.* STATE OF INDIANA.

[No. 776S221. Filed February 28, 1978.]

650

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *David L. Steiner,* Deputy Attorney General, for appellee.

HUNTER, J.—The petitioner, Terry Wayne Walker, was tried for and convicted of *murder for hire.* His conviction was affirmed by this Court in *Walker* v. *State,* (1976) 265 Ind. 8, 349 N.E.2d 161.

Subsequently, on March 31, 1976, petitioner filed a petition denominated "Petition for Permission to File Second Belated and Supplemental Motion to Correct Errors" and a "Second Belated Motion to Correct Errors," seeking a new trial. The ground for the motion was the discovery of an agreement between the prosecution and the principal state's witness, Charlotte Hendricks. Accompanying the petition and the motion to correct errors were portions of a transcript of the trial of Charlotte Hendricks. Subsequently the state appeared

and filed a transcript of the testimony of Douglas Knight, the deputy prosecutor, at the trial of Charlotte Hendricks. These transcripts were made a part of the record. No request for a hearing was made and the petitioner's second belated motion to correct errors was overruled without a hearing.

In a post-conviction proceeding, the petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence. *Lockhart* v. *State*, (1971) 257 Ind. 349, 274 N.E.2d 523. The unsuccessful petitioner stands in the position of one appealing a negative judgment. It is only where the evidence is without conflict and leads to but one conclusion and the trial court has reached an opposite conclusion that the decision will be disturbed as being contrary to law. *Hoskins* v. *State*, (1973) 261 Ind. 291, 302 N.E.2d 499.

Although Charlotte Hendricks testified at her trial that she had been promised immunity, this is not an uncontradicted fact. Deputy Prosecutor Douglas Knight testified as follows:

"Thank you. I think what you are referring to is a tape recorded conversation that occurred between Gerald Baggerly, Robert Overby and perhaps other members of the Roseville, Michigan Police Department and the defendant, Charlotte Hendricks, wherein some peculiar statements were made to Charlotte Hendricks to the effect that if she told the truth to them and didn't lie or anything like that that it would be better for her at a time when the Police Officers had no idea of the extent or nature of her involvement in this case. So, that information, in light of that, there were statements made to her that were in the nature or spirit of your question. Beyond that, when I met Charlotte Hendricks, I was troubled by that statement and made it rather clear to her that there were no promises and that she would be prosecuted and she indicated that she understood that and stated the same thing on several occasions so based on what she told me that she understood and that I had made myself clear to her it was my conclusion that there were no promises, there were no favors to be given her or any favors whatsoever and that she would be prosecuted to the fullest extent of the law."

This testimony conflicts with that of Charlotte Hendricks. The trial court with all of the evidence before it resolved this issue against the petitioner. Where the evidence is conflicting, the trial court's action must be upheld.

Where newly discovered evidence is urged as a basis for a new trial, the defendant has the burden of proving that the alleged newly discovered evidence must not be merely impeaching; it must be non-cumulative and must be likely to produce a different result. *Jones* v. *State,* (1974) 262 Ind. 159, 312 N.E.2d 856.

Here, the evidence most favorable to the judgment reveals only that promises of consideration were made by a police officer who had no authorization. When the prosecuting attorney discovered these promises he corrected the situation by clearly telling the witness that no immunity was being offered her. This was five months prior to her testimony. At Walker's trial she testified that no promises were made to her. This was an untrue answer as to the unauthorized promises by the police officer that he would "do what he could for her." At her own trial she testified that she had an agreement. She was, however, well aware that she was receiving no immunity and had been so advised by the prosecutor eighteen months prior to her trial. We are of the opinion that the trial court properly reviewed all the matters surrounding the allegations contained in the petition for post-conviction relief, and we find that the trial court's ruling was justified by the record before it.

For all the foregoing reasons, there was no trial error and the judgment should be affirmed.

Judgment affirmed.

Givan, C.J. and Pivarnik, J., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

## DISSENTING OPINION

DeBruler, J.—The accomplice of appellant, Charlotte Hendricks, testified at his trial under direct questioning by the prosecuting lawyer that "I had been made no promises whatsoever." In the post-conviction proceeding below appellant presented the testimony of Charlotte Hendricks, Detective Robert Overby and Deputy Prosecutor Knight, all of which is in accord in establishing the fact that Charlotte Hendricks was first contacted by Overby in Roseville, Michigan, and that she was there told that she was suspected of being involved in the homicide allegedly committed by appellant and that she would be given "consideration" if she cooperated in the case against appellant. Specifically in this regard Detective Overby stated under oath:

Q. "On or about that initial contact with her did you tell her or advise her that her cooperation on her part there would be consideration given by you as a member of the Evansville Department that you represented and the Prosecutor, that you would assist her and help her in any way you could?"

A. "That I could."

Q. "Did you not tell her that you would help her for her cooperation?"

A. "Yes, Sir."

The detective stated further that he believed that she then cooperated because she held the belief, induced by his statements, that she would benefit thereby in the prosecution against her.

She then cooperated with the police in accordance with the agreement up to a point prior to trial when according to the testimony of the prosecutor, he gained knowledge of the offer of consideration made to her by Overby and in response called her in and "instructed her that there were no promises, no rewards, no deals, no agreements, absolutely nothing."

The uncontradicted evidence before the post-conviction judge leads to only one conclusion and that is that the prose-

cution kept highly significant information, namely, that Hendricks had been offered consideration for her cooperation in the case against appellant and that upon that offer she did cooperate for a time, and that thereafter the prosecutor cancelled the agreement. There was further testimony by Hendricks that her testimony in the trial of appellant was exaggerated and there was further testimony by the prosecuting attorney that if appellant's trial had taken place without Hendricks' testimony, or if Hendricks' testimony had not been believed by the jury, the prosecution would have had only a slim chance to succeed in getting a conviction. The credibility of Hendricks was thus a vital issue in appellant's trial and the prior understanding or agreement was relevant to that issue. Under these circumstances the prosecutor was under a constitutional duty to disclose this information to the appellant and the jury and his failure to do so denied appellant's right to a fair trial. *United States* v. *Agurs,* (1976) 427 U.S. 97, 96 S.Ct. 2392; *Giglio* v. *United States,* (1972) 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; *Newman* v. *State,* (1975) 263 Ind. 569, 334 N.E.2d 684.

Prentice, J., concurs.

NOTE.—Reported at 372 N.E.2d 739.