Eugene DIGGS and Curlean Williams,
Appellants (Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 480S109.

Supreme Court of Indiana.

Dec. 29, 1981.

Nile Stanton, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Petitioners Diggs and Williams were convicted by a jury in the LaPorte Superior Court of delivery and conspiracy to deliver a controlled substance. Their convictions were affirmed by this Court. *Diggs v. State*, (1977) 266 Ind. 547, 364 N.E.2d 1176. They filed a petition for post-conviction relief pursuant to Ind.R.P.C. 1, which petition was denied following a hearing, on October 23, 1979. This appeal is from that judgment and assigns several issues, all of which relate to the alleged failure of the State to disclose its actions which, Petitioners charge, induced the State's witness, Billy Ashley, to testify against them. Specifically, Petitioners alleged that, in consideration of his testimony, the prosecutor caused the witness to be released from prison on probation, paid him $325.00 from his personal funds, granted or obtained special treatment of several of the witness' friends who were under criminal charges and made no disclosure of any of the foregoing. Petitioners maintain that under the totality of the circumstances, they were denied fundamental fairness and due process of law, in that they were deprived of the impeaching effect disclosure of such information would have had upon the testimony of the witness.

The State's witness, Billy Ashley, testified at Petitioners' trial concerning drug deals between himself and the appellants. He also testified that five months before the trial, he had been sentenced to imprisonment on a similar charge and that his sentence had been suspended about one week earlier. Upon cross-examination, it was disclosed that he had been advised by his attorney that he might get probation on his sentence in exchange for his testimony and that he had so informed defense counsel at an earlier date. Thus, we believe that it cannot be said that there had been no disclosure to the jury that the witness' testimony had been induced by State action.

The petitioners' trial began on September 15th and lasted through September 19th. Following the witness' release, the trial deputy prosecutor paid him a total of $325.00 from his personal funds. Of this sum, $75.00 was paid on September 9th, $175.00 on September 12th, and $75.00 was paid on September 22nd. These payments, however, were not disclosed. At the post conviction hearing, the deputy acknowledged the payment and the non-disclosure. He did testify, however, that the payments were not for the witness' testimony but were to enable him to relocate in the interest of his personal safety.

With regard to the petitioners' allegations that the State, acting through the trial prosecutor, had agreed to and did, in fact, grant or obtain special considerations for certain of the witness' friends, the trial prosecutor expressly denied them. Hence we find no merit to the claim that the post conviction judge's finding to that effect cannot stand.

█ In post conviction proceedings, the petitioners bear the burden of proving their contentions by a preponderance of the evidence. *Lamb v. State,* (1975) 263 Ind. 137, 143, 325 N.E.2d 180, 183. The trial judge, as trier of the facts, is the sole judge of the weight of the evidence and the credibility of the witnesses. *Rufer v. State,* (1980) Ind., 413 N.E.2d 880, 882. Petitioners stand in the position of one appealing a negative judgment. It is only where the evidence is

without conflict and leads to but one conclusion, and the trial court has reached an opposite conclusion, that the decision will be disturbed as being contrary to law. *Walker v. State,* (1978) 267 Ind. 649, 651, 372 N.E.2d 739, 740.

█ This Court has long recognized that the State is under a continuing duty to disclose any inducements offered in exchange for a witness' testimony. *Williams v. State,* (1980) Ind., 409 N.E.2d 571. Such testimony should be highly scrutinized by the jury or fact-finder, because a defendant may be found guilty solely upon the evidence of a witness who turns "state's evidence." *Walker v. State,* (1934) 206 Ind. 232, 189 N.E. 127, *Payne v. State,* (1924) 194 Ind. 365, 142 N.E. 651. The fact-finding body must therefore have before it all of the relevant circumstances that caused or induced the witness to testify as he did, including the rewards for such testimony.

The prosecutor's constitutional duty to disclose exculpatory matter to the defense is governed by the United States Supreme Court opinion in *United States v. Agurs,* (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, *Richard v. State,* (1978) Ind., 382 N.E.2d 899. As detailed in *Agurs* and *Richard,* our analysis must reflect an overriding concern for the defendants' right to a fair trial as mandated by the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution. This Court has expressly adopted the *Agurs* material disclosure test, which states:

"It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is not justification for a new trial." *Agurs,* 427 U.S. at 112, 96 S.Ct. 2402, 49 L.Ed.2d 355.

█ In our review of the evidence given at Petitioners' trial, however, we found that the evidence of their guilt was sufficient,

---

without resort to the testimony of the witness, Billy Ashley. *Diggs v. State*, (1977) 266 Ind. 547, 364 N.E.2d 1176. Additionally, inasmuch as the jury was aware of a bargain having been made with the State whereby the witness had received substantial benefits in return for his testimony, the post conviction judge was not precluded from finding that a more detailed disclosure, i.e. a disclosure of all benefits, would have given rise to a reasonable doubt as to the petitioners' guilt.

Although we find no reversible error, this opinion should not be regarded as an approval of the State's non-disclosure.

The judgment of the Trial Court is affirmed.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., dissents with opinion.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion. Constitutional considerations, ethical precepts, and our own case precedent all defy its response to the circumstances before us.

It is not disputed that as part and parcel of a bargain to secure Billy Ashley's testimony against petitioner, the state agreed to pay Ashley $325 [1] and to obtain his release from a five-year prison sentence he had just begun to serve. Nor is it disputed the state did not disclose these facts to the defense prior to trial.

Nor should there be any doubt concerning the law which bears on the question before us. Our Code of Professional Responsibility, Ethical Canon 7–13, places an affirmative duty on public prosecutors to "make timely disclosure of available evidence" which is "known to him" as part of the prosecutor's larger duty to insure convic-

tions are fairly obtained. In implementing the precept, this Court has unanimously recognized a prosecutor is *not* "entitled to play upon his position as public servant to obtain unfair advantage in a criminal trial." *Craig v. State*, (1977) 267 Ind. 359, 368, 370 N.E.2d 880, 884.

Our federal and state constitutions guarantee defendants the right to a fair trial and due process of law. U.S.Const. amend. 5 and 14; Ind.Const. art. 1, § 13. Our United States Supreme Court has held the Fifth Amendment places an affirmative duty on prosecutors to disclose information if it is of "sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs*, (1976) 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 352. "Prudent prosecutors," the Court observed, "will resolve doubtful questions in favor of disclosure." *Id.*

Under our case law, the question whether the prosecutor should have disclosed the consideration tendered to Ashley in exchange for his testimony is not even arguable. In *Newman v. State*, (1975) 263 Ind. 569, 334 N.E.2d 684, decided prior to *Agurs*, this Court held the prosecutor must disclose any promises, grants of immunity, and rewards which have been offered in exchange for testimony. For this unanimous Court, Chief Justice Arterburn explained the relationship between the disclosure requirement and a fair trial:

"An accomplice who turns 'state's evidence' and agrees to 'cooperate' with the State in consideration of leniency or the dismissal of charges by the State, to be realistic, is being bribed, regardless of the fact that public policy has approved such action in the interest of effective law enforcement. It does not necessarily follow that because of inducements offered to the accomplice his testimony is false. It is, however, highly suspect. Because

---

1. As the majority indicates, the money was initially paid from the deputy prosecutor's personal funds; it is unrefuted, however, that he was subsequently reimbursed from the prosecutor's budget. Had the reimbursement not occurred, however, a new trial would be justified pursuant to EC 7–13, *infra*, and *Craig v.*

*State, infra.* Lest an aura of partiality attach to their office, prosecutors should refrain from interjecting their personal financial resources into the prosecution of *any particular defendant or crime. Code of Professional Responsibility*, Ethical Canon 9–1; EC 7–13, *infra*.

of the pressure of such undue influence upon the witness in such cases the jury should have the evidence relating thereto. Such type of influence naturally impairs the credibility of such a witness.

\* \* \* \* \* \*

"In the case before us it appears that the omission as to the immunity granted was inadvertent. Nevertheless, such inadvertence does not change the effect the omitted evidence may have had upon the jury's consideration in the conviction of the appellant.

\* \* \* \* \* \*

"The court below also concluded, however, that there is no reasonable likelihood that the evidence would have affected the verdict of the jury or the outcome of the trial. With this we can not agree. The testimony of another witness, the victim of the crimes charged, gave substantially the same evidence as the testimony of the accomplice in question here. But the testimony of each witness clearly was intended to reinforce the testimony of the other. The credibility of one witness would have an effect on the strength of the testimony offered by the other. "While agreements of leniency have been long accepted, this court cannot condone the non-disclosure of such an agreement from a jury. The judgment of the trial court is reversed and a new trial ordered." *Id.*, 263 Ind. at 572–4, 334 N.E.2d at 686–8.

In ruling Newman's petition for post-conviction relief should be granted, this Court utilized the very test later laid down in *United States v. Agurs, supra* :

"It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor impor-

tance might be sufficient to create a reasonable doubt." *United States v. Agurs, supra*, 427 U.S. at 112–3, 96 S.Ct. at 2402, 49 L.Ed.2d at 355.

The majority maintains that—beyond a reasonable doubt—the state's failure to disclose its bargain to defendant was harmless. Its conclusion is predicated on three bases, which are addressed in turn.

First, the majority relies on the fact that this Court previously affirmed petitioner's conviction on direct appeal without reference to the testimony of witness Ashley. *See, Diggs v. State*, (1977) 266 Ind. 547, 364 N.E.2d 1176. As expressly stated in *Agurs* and as implemented in *Newman*, however, petitioner does not have "the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal." *United States v. Agurs, supra*, 427 U.S. at 111, 96 S.Ct. at 2401, 49 L.Ed.2d at 354. The question whether defendant in fact received a fair trial notwithstanding the state's nondisclosure is dependent on ascertaining if the undisclosed evidence *might* have influenced the jury's decision; the matter is not resolved solely by the sufficiency of the evidence. *Newman v. State, supra. Cf., Follrad v. State*, (1981) Ind., 428 N.E.2d 1201, and *Walker v. State*, (1980) Ind., 410 N.E.2d 1190 (question whether improper separation of jurors might have influenced verdict is not dependent upon sufficiency of the evidence).

Second, the majority assumes the jury was "aware" of the state's bargain by virtue of the trial testimony of witness Ashley where, during cross-examination, he stated he had been advised by his attorney he *might* get probation on his sentence in exchange for his testimony.

The trial record, however, reveals witness Ashley expressly denied his freedom was predicated on his cooperation with the state and testimony against petitioner. Defense counsel was then required to resort to prior statements made by Ashley in an attempt to impeach him:

Q. "And here you sit right now, a free man, right?"

A. "That's right."

Q. "Because you told them you were going to testify against others if they would let you go free, right?"

A. "No."

A. "I just found out that I would be— my time would be suspended."

Q. "This September, this month?"

A. "Yes."

Q. "I questioned you last month in the courthouse, did I not?"

A. "You did."

Q. "Didn't you give me about the same story?"

A. "What do you mean, same story?"

Q. "You're going to get leniency for testifying?"

A. "I didn't say I was going to get a suspended sentence or anything. I said some consideration might be given to my sentence."

Q. "And you spoke of probation, didn't you?"

A. "No, I didn't."

Q. "You didn't speak of probation?"

A. "No, you did."

Q. "At first you said you were going to get no leniency, remember that?"

A. "I don't remember, Mr. Kray."

Q. "Remember it took me twelve questions to have you admit you were going to get leniency and go on probation?"

A. "No, I don't remember that, either."

Not insignificantly, the state made no effort following this testimony to reveal the bargain through re-direct examination of Ashley.

From this muddled testimony and these refutations by Ashley the majority concludes the jury "was aware" a bargain with the state had induced Ashley's testimony and that he had received "substantial benefits" therefor. This supposition on the wholly subjective matter of the jurors' deductions from the above testimony stands in marked contrast with the majority's acknowledgment of the rule at issue: that the fact-finder "should have before it all the relevant circumstances that caused or induced the witness to testify...." Suffice it to say that had the state fulfilled its affirmative responsibility to reveal its bargain, defense counsel could have *intelligently* cross-examined the witness and actually informed the jury of Ashley's motivation to testify.

Third, the majority has excluded the state's payment of $325 to Ashley as a factor which bears on the question before us. Reiterating the deputy prosecutor's testimony, the majority characterizes the payment of $325 as "not for the witness's testimony," but rather to permit him to relocate in the interest of his personal safety.

If the witness had not testified, however, there would have been no need for him to relocate; his address would have remained at the State Prison in Michigan City, and concern over possible retribution for his testimony would not have arisen. To sever the $325 from the state's bargain is a dubious approach. That is particularly so when, although the money was paid for relocation purposes, it was doled out in increments before, during, and after trial. And oddly, the record of the post-conviction hearing reveals the witness Ashley ultimately returned on a permanent basis to the town of Michigan City within a month of his "relocation," notwithstanding the "threats" on his life.

Finally, the state has attempted to justify its non-disclosure on the rationale that the fear of reprisals which prompted the payment was not evidence favorable to the defense. The argument is an affront to due process considerations; it is elementary the defense should be permitted to determine for itself whether informing the jury of the state's bargain would aid or injure the defense. The state's fulfillment of its duty of disclosure would afford the defense that due process right, including the opportunity to investigate whether the alleged necessity for the witness to relocate has basis in fact. That would have been particularly appropriate here, where the deputy prosecutor conceded he paid the $325 on the

basis of hearsay information of threats toward Ashley.

Implicit in *Agurs* and *Newman* is recognition that the assessment of the effect any particular information or circumstance might have had on the jurors' assessment of the facts and law is a matter not susceptible to resolution by objective factors. *Adler v. State*, (1967) 248 Ind. 193, 225 N.E.2d 171; *see also, Follrad v. State, supra; State v. Bowman*, (1981) Ind., 423 N.E.2d 605. Consequently, any doubts in the determination of whether the jury's verdict might have been influenced had the bargain been disclosed must be resolved against the state, whose failure to fulfill its duties has precipitated the question. As utilized in *Newman*, this approach not only insures the particular defendant's due process rights were satisfied; in addition, it serves the broader purposes of maintaining strict adherence to the disclosure requirement and, in turn, perpetuating public confidence in the proposition that our criminal justice system yields convictions fairly obtained. EC 7–13, *supra, see also, Watson v. State*, (1973) 261 Ind. 97, 300 N.E.2d 354; *Dube v. State*, (1971) 257 Ind. 398, 275 N.E.2d 7.

It is these considerations which prompted our unanimous decision in *Newman* to grant a new trial. There, as here, the testimony of the witness secured by the state's undisclosed bargain, was corroborative in nature. I am unable to conclude beyond a reasonable doubt that the jury's verdict might not have been influenced had the defense had the opportunity to intelligently impeach Ashley; indeed, the generous nature of the bargain struck by the state belies its argument that Ashley's testimony was inconsequential.

For all the foregoing reasons, I must respectfully dissent from the majority opinion. The petition for post-conviction relief should be granted and a new trial ordered.