**Roy L. MOSS, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 4–1081A142.**

Court of Appeals of Indiana, Fourth District.

April 19, 1982.

On Rehearing May 26, 1982.

John B. Wilson, Jr., Nashville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Roy L. Moss appeals his conviction by an Owen Circuit Court jury for Intimidation. Ind.Code 35–45–2–1. He was sentenced to two years probation, 30 days in the Owen County Jail and a fine of $500 plus court costs. Moss contends the evidence was insufficient to convict him, that irrelevant and prejudicial evidence was admitted and that new, exculpatory evidence has been discovered since the trial.

We affirm the conviction.

## I. ISSUES

The following specific issues have been presented for our review:

1) Was the evidence sufficient to convict Moss of violating Ind.Code 35–45–2–1, which reads:

"Intimidation.—(a) A person who communicates a threat to another person, with the intent that the other person engage in conduct against his will, commits intimidation, a class A misdemeanor. However, the offense is a class D felony if the threat is to commit a forcible felony.

(b) 'Threat' means an expression of intention to:

(1) unlawfully injure the person threatened or another person or damage property;

(2) Unlawfully subject a person to physical confinement or restraint;

(3) Commit a crime;

(4) Unlawfully withhold official action, or cause such withholding;

(5) Unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim for witness fees or expenses;

(6) Expose the person threatened to hatred, contempt, disgrace, or ridicule; or

(7) Falsely harm the credit or business reputation of the person threatened."

2) Did the trial court commit reversible error when it allowed evidence Moss was once accused of raping one or more young women?

3) Did the trial court err by not granting Moss another trial based on newly discovered evidence?

## II. SUFFICIENCY OF EVIDENCE

In determining the question of sufficiency of evidence we do not weigh the evidence nor resolve questions of credibility but look only to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable jury could infer the defendant was guilty beyond a reasonable doubt. *Neice v. State,* (1981) Ind., 421 N.E.2d 1109, 1111.

The evidence in a light most favorable to the State is as follows:

On January 6, 1980, Kathleen Soares was returning home alone from Sunday service at her church. She stopped her car alongside the road near the top of a hill overlooking her mobile home in rural Owen County. She intended to leave the car parked there, as she often did in bad weather, and walk the remaining distance.

Before she left her car, a neighbor, Roy Moss, approached her. Moss had previously made unwanted sexual advances toward her and on one occasion told her he could rape her and "nobody would do anything about it in town." She was afraid of Moss and had warned him to stay away from her or she would shoot him.

Mrs. Soares was 45, divorced and lived alone. She had moved to Owen County two years earlier from Indianapolis, where she had lived since childhood. Moss, 50, was a former truck driver who lived with his wife on the proceeds of a veteran's disability pension.

When Mrs. Soares saw Moss approach her car, she locked the doors. "Then, he came up and started beating on my door and said he was going to rape me and if I would go in town and tell anybody anything, that he would come in that trailer and kill me." The confrontation continued for several minutes and then he left. Mrs. Soares drove directly to the sheriff's office and reported the incident. The prosecutor prepared the following information:

"Kathleen Mae Soares, being duly sworn, upon oath says that on or about the 6th of January, 1980, at the County of Owen and in the State of Indiana, one ROY L. MOSS did communicate to Kathleen Mae Soares, an expression of intention to commit a forcible felony, to-wit: threatening to rape and kill said Kathleen Mae Soares, with intent that said Kathleen Mae Soares engage in conduct against her will, to-wit: to permit ROY L. MOSS to have a relationship with Kathleen Mae Soares. All of which is contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana, I.C. § 35–45–2–1, Penalty Class D Felony."

Moss contends the prosecution presented no evidence showing he intended to force Mrs. Soares to have a "relationship" with him. He argues the mere proof of a threat of rape and murder was insufficient to prove any intent to force an unwilling "relationship." Without doubt, the only evidence by the State of Moss' intent was Mrs. Soares's testimony. He told her he was going to rape her and he would murder her if she told anyone. To be forced to suffer rape in silence is an exploitive sexual relationship of the most demeaning character. Not only is there a physical and emotional violation of a human being, deep psychological pain is inflicted that festers due to the continuation of fear and injustice. The choice between silent submission or death is a kind of blackmail the Intimidation statute properly makes a crime.

█ Obviously the jury chose to believe Mrs. Soares' testimony. That testimony was sufficient to show Moss used the threat of forcible felonies with the intention of forcing her to act against her will.

### III. ADMISSIBLE EVIDENCE

Moss next contends the trial court erred when it allowed his wife on cross-examination to testify she had inquired at the prosecutor's office about a report accusing her husband of raping several young women. The defense objected on grounds the testimony was irrelevant, highly prejudicial and hearsay. The trial court overruled the objection and admonished the jury to consider the evidence only on the question of the witness's credibility.

Essentially, the line of questioning was as follows: On direct examination, Mrs. Moss testified her husband had been threatened by Mrs. Soares. On cross-examination, the prosecutor asked if anyone else had threatened her husband. Notwithstanding an objection by the defense attorney that the question was irrelevant, the witness replied: "Not to my knowledge." The defense did not ask that her answer be stricken or that the jury be admonished to disregard it.

The prosecution then began a line of questioning to show Mrs. Moss did have knowledge of other threats.

"Q. ... Did you or did you not on September 20th, 1979, report to my office that one Gene Fuller had threatened to blow your husband's head off?

"A. Yes.

\* \* \* \* \* \*

"Q. Why was that threat made, what'd you tell us about that?"

The defense again objected and the court admonished the jury:

"The objection well [sic] be overruled and the jury is instructed that the Court's ruling is based upon the right of the Prosecuting Attorney to test the credibility of this witness and you are instructed to receive her testimony solely for the purpose of the evaluating of her testimony—I mean, the credibility of her testimony and for no other purpose at this time."

Mrs. Moss answered:

"A. That I had heard there was a report filed by Gene Fuller; that Gene had threatened to shoot Roy and it all went back to—he owed us money. He'd blowed up a car. We fed his children, we kept them, we bought a TV from them when they were layed off; he didn't have money for food, we took the TV back to the family and told them to pay us the money when they could. We called and asked for the money and one of the older children wanted us to buy her a car, which we refused to do. I heard a rumor that there was a report that they had filed in Owen County. I went to the Prosecutor's Office to inquire about it.

"Q. About what?

"A. Whether or not Roy had—had any relations—

"Q. Inquire about what?

"A. —with three children, no.

"MR. FOUNTAIN: Okay. No further questions.

"A. Three young adults—

"COURT: All right. Any redirect?"

On redirect, Mrs. Moss testified that nothing came of the Fuller accusations and she continued to remain a friend of the Fullers.

■ The trial court in its discretion has wide latitude in permitting cross-examination to test the credibility of a witness and only a clear abuse of such discretion demands reversal. *Brandon v. State*, (1979) Ind., 396 N.E.2d 365; *Brooks v. State*, (1973) 259 Ind. 678, 291 N.E.2d 559; *Tipton County Abstract Co., Inc. v. Heritage Federal Savings and Loan Association*, (1981) Ind.App., 416 N.E.2d 850.

■ Moss argues the impeachment value of the inquiry ended when Mrs. Moss admitted she discussed a threat at the prosecutor's office on September 20, contrary to her earlier testimony. We disagree. After Mrs. Moss admitted she had knowledge of another threat, her knowledge of the reason for the other threat was relevant to explain her reluctant testimony and to shed light on her credibility as a witness. The trial court properly admonished the jury to restrict their consideration of Mrs. Moss's testimony about threats to the question of her credibility. We see no reason to believe the jury did otherwise and we find no abuse of the trial court's discretion in permitting the question to be answered.

## IV. NEWLY DISCOVERED EVIDENCE

Finally, Moss contends the trial court erred by not granting a new trial based on the newly discovered evidence raised in his motion to correct errors. The newly discovered evidence consisted of Graciano Espinoza's testimony that he was a witness to some of the conversation during which Moss confronted Mrs. Soares.

Espinoza could be expected to testify that neither Moss nor Mrs. Soares was aware of his presence and that he heard Moss say: "... threaten to kill me?" and "... if you pull that gun on me I've got one, too, and I'll shoot back," and "I told you Kathy, if you ever pull that gun on me I'll blow your head off." Espinoza also claims to have heard Moss accuse Mrs. Soares of adultery and say he planned to tell her lover's wife about it.

■ When a new trial is requested based upon newly discovered evidence, the moving party must establish:

"(1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon retrial of the case; and (9) that it will probably produce a different result."

*Tessely v. State*, (1978) 267 Ind. 445, 453, 370 N.E.2d 907, 912, *quoting Emerson v. State*, (1972) 259 Ind. 399, 407, 287 N.E.2d 867, 871–72. A motion for a new trial predicated on newly discovered evidence is viewed with disfavor, and the denial of such a motion will be reversed only if the trial court abused its discretion in concluding that a different result upon retrial would

not have been probable. *Helton v. State*, (1980) Ind., 402 N.E.2d 1263, 1267.

Moss contends Espinoza's testimony, if given at trial, meets all the above requirements and would probably produce a different result at a new trial. Presumably, Moss means the testimony would have negated an essential element of the crime of Intimidation—the intent that the victim engage in conduct against her will. He argues that what Espinoza heard goes "directly to the issue of whether or not the Appellant was guilty of Intimidation."

We are unconvinced. At best, Espinoza's testimony indicates he did not hear Moss threaten to rape Mrs. Soares and threaten to kill her if she told anyone. Espinoza's testimony also indicates he did not hear the entire exchange between Mrs. Soares and Moss.

■ No abuse of discretion has been shown. Even if Espinoza did not hear any talk of rape and murder, it remains evident he did not hear the entire conversation. Substantial evidence was before the jury from which it could conclude the threats were made and were intended to force Mrs. Soares to submit to Moss's will. Espinoza's testimony would not negate the element of intent nor add any new information about the incident which would have required the jury to disbelieve Mrs. Soares. The trial court properly exercised its discretion in concluding that a different result upon retrial was improbable.

We find no error. The judgment of the trial court is affirmed.

MILLER, P. J., and YOUNG, J., concur in result.

## ON PETITION FOR REHEARING

Our decision in this matter was rendered on April 19, 1982. *Moss v. State*, (1982) Ind.App., 433 N.E.2d 852. (Miller, P. J., and Young, J., concurring in result). On May 6, 1982, appellant Roy Moss filed a five-page document entitled Petition for Rehearing. The document contains no separate and concise statement of the reasons why the decision is thought to be erroneous, but rather briefs once more the appellant's argument for new trial.

■ By failing to set out a concise assignment of appellate error and by introducing argument into the petition, Moss has failed to comply with the requirements of Ind. Rules of Procedure, Appellate Rule 11(A), which states in part:

> "Rehearings. Application for a rehearing of any cause may be made by petition, separate from the briefs, signed by counsel, and filed with the clerk within twenty (20) days from rendition of the decision, stating concisely the reasons why the decision is thought to be erroneous. Such application may, if desired, be supported by briefs, but such briefs will not be received after the time allowed for filing the petition."

Failure to meet the requisite of this rule may result in the summary dismissal of the petition for rehearing. *Mikesell v. Mikesell*, (1982) Ind.App., 436 N.E.2d 95; *Ross v. Schubert*, (1979) Ind.App., 396 N.E.2d 147; *Lamb v. Thieme*, (1977) Ind.App., 369 N.E.2d 681; *see also*, B. Bangi, L. Giddings, K. Stroud, *4A Indiana Practice, Appellate Procedure* § 152 (1979) and cases cited therein.

Because appellant has not complied with A.R. 11(A), the petition is ordered dismissed.

Miller, P. J., and Young, J., concur.