**Richard E. SHAFFER, Petitioner-Appellant,**

v.

**STATE of Indiana, Respondent-Appellee.**

No. 2–982A322.

Court of Appeals of Indiana, First District.

Sept. 21, 1983.

Rehearing Denied Nov. 1, 1983.

Marcus C. Emery, Steers, Sullivan, McNamar & Rogers, Indianapolis, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for respondent-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Appellant Richard Shaffer appeals from the denial of his petition for post-conviction relief by the Marion Superior Court. We affirm.

## FACTS

On August 27, 1977, the victim, R.H., awoke in the early morning hours to find a man in her bedroom. When she began to scream, the man placed a pillow over her face and repeatedly told her to stop screaming or he would beat her to death. The victim was then ordered to undress her attacker. When she was unable to do so, he undressed himself and then attempted to perform cunnilingus. The victim dissuaded him by claiming to have a serious infection. The man then instead forced her to commit fellatio and subsequently proceeded to force intercourse several times. After he left, and fearing his return, R.H. relocked the doors and windows. Her assailant did in fact return to retrieve the cigarettes and eyeglasses he had left behind. However, the coincidental approach of a passing police car prompted the man to leave.

When she was certain he had left, R.H. roused her neighbors, who then called the police. The responding officer, after taking statements and securing the scene and evidence, took R.H. to the hospital where a standard sexual assault examination was conducted. This included a sperm smear, vaginal washing for acid phosphatase, blood type, and VDRL. After the examination, R.H. returned home only long enough to gather some clothes and then left.

Around 5:30 A.M. that same morning, the neighbor, to who R.H. earlier had contacted for help, took his dog out and noticed a man loitering about the windows of the victim's home. Without any solicitation, the man asked if the occupant had been raped. While advising the man to leave, the neighbor recognized him as the Arab pest control man who lived two houses away. Upon the neighbor's questioning, the man admitted that he was indeed "the bug man." Record at 352.

On August 30, 1977, R.H. met with a detective of the sex crimes unit of the Indianapolis Police Department. From the description of the assailant that R.H. had given the responding officer on the night of the attack, the detective had prepared a photographic line-up from which R.H. positively identified the defendant as the man who had raped and sodomized her. R.H. also subsequently unequivocally identified the defendant at trial. Shaffer was convicted of rape and sodomy. His conviction was affirmed on direct appeal to this court. A subsequent petition for post-conviction relief was denied and it is from this denial that Shaffer now appeals.

## ISSUES

Shaffer raises three issues on appeal. Rephrased, they are as follows:

1. Did the post-conviction court abuse its discretion in denying appellant's motion for a new trial based on newly-discovered evidence?

2. Did the post-conviction court err in refusing to admit certain statistical data?

3. Did the post-conviction court err in excluding the testimony of a juror from Shaffer's original trial?

## DISCUSSION AND DECISION

*Issue One*

The post-conviction court did not abuse its discretion in denying appellant's motion for a new trial based upon newly-discovered evidence.

Subsequent to the conclusion of the trial, appellant discovered that, at the time of the attack, the victim had been suffering from gonorrhea. Shaffer contends that because he did not contract the disease, such evidence would probably produce a different result upon the retrial of the case. The post-conviction court disagreed and denied Shaffer's petition on that ground.[1] We conclude that the court did not err in denying the petition.

We begin by noting that an unsuccessful petitioner for post-conviction relief stands in the shoes of one appealing a negative judgment. *Walker v. State,* (1978) 267 Ind. 649, 651, 372 N.E.2d 739, 740. The petitioner must demonstrate that the decision of the post-conviction court is contrary to law. *See Hollonquest v. State,* (1982) Ind., 432 N.E.2d 37, 39; *Diggs v. State,* (1981) Ind., 429 N.E.2d 933, 934. The hearing on a petition for post-conviction relief is civil in nature, *Henry v. State,* (1976) 170 Ind.App. 463, 465, 353 N.E.2d 482, 484; *Shields v. State,* (1976) 169 Ind.App. 238, 240, 348 N.E.2d 36, 37, and the petitioner must prove his allegations by a preponderance of the evidence. *Diggs; Beard v. State,* (1981) Ind., 428 N.E.2d 772, 775. We also note that a claim of newly discovered evidence, as a basis for a new trial, is viewed with disfavor by this court. *Pedigo v. State,* (1982) Ind.App., 443 N.E.2d 347, 349; *Moss v. State,* (1982) Ind.App., 433 N.E.2d 852, 855, *trans. denied.* The denial of such a claim will be reversed only upon a showing of an abuse of discretion. *Pedigo; Moss,* 433 N.E.2d at 855–56. In order to demonstrate that the newly discovered evidence merits the granting of a new trial, the petition must be supported by an affidavit which contains a statement of the facts showing:

"(1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. [Citation omitted.]"

*Smith v. Smith,* (1982) Ind., 429 N.E.2d 956, 958, quoting *Tungate v. State,* (1958) 238 Ind. 48, 54–55, 147 N.E.2d 232, 235–36. Shaffer contends that, because R.H. had gonorrhea and he did not, he has met his burden of showing that the evidence would produce a different result upon retrial. We cannot agree.

While it was demonstrated at the post-conviction hearing, by reference to undisputed medical records, that R.H. did indeed have an active gonorrheal infection at the time of the attack, such definitive evidence was not adduced to support Shaffer's claim that he did not have gonorrhea. Instead, testimony indicated that Shaffer was called to the office of the medical officer of the Marion County Sheriff's Department on September 23, 1977, and *asked* whether he had any symptoms of venereal disease.[2] Shaffer's wife also testified at the post-conviction hearing that prior and subsequent to the attack, she had had sexual relations with her then boyfriend Shaffer and had not contracted gonorrhea. She also testified that as part of her prenatal care, the hospital had run tests to determine whether she had any diseases which could threaten her child. However, no conclusive medical evidence was adduced to support defendant's claims. We cannot agree that such unsupported, self-serving claims constitute proof by a preponderance of the evidence

---

1. The Order Upon Pre-Appeal Conference indicates that the state stipulated, for purposes of the appeal, that the appellant had carried his burden of proof as to the other elements of his claim for a new trial based upon newly-discovered evidence. *See* discussion *infra.*

2. On September 30, a month after the attack, Shaffer was visually inspected by the medical officer because the victim had indicated that her attacker had a growth or scab on the side of his penis which had abraded the lining of her mouth. Apparently nothing untoward was found.

that such evidence would probably produce a different result upon retrial.

Further, as defendant himself has correctly noted:

"In order to be successful in a post-conviction relief petition, it must be shown the newly discovered evidence will probably produce a different result on retrial. In making this determination the post-conviction court 'should consider the weight which a reasonable trier of fact would give the proffered evidence and the probable impact of it *in light of all the facts and circumstances shown at the original trial of the case.*' [Citations omitted, emphasis supplied.]"

*Adams v. State,* (1982) Ind., 430 N.E.2d 771, 774. Based upon the previously-stated facts, we cannot say that Shaffer's less-than conclusive evidence would probably result in a different result upon retrial. We, therefore, conclude that the post-conviction court did not err in denying Shaffer's petition for a new trial based upon his claim of newly-discovered evidence.

*Issue Two*

The court did not err in refusing to admit Shaffer's statistical data.

Shaffer attempted to introduce a portion of a U.S. Department of Health and Human Services Sexually Transmitted Disease Statistical Letter which purported to demonstrate that only roughly 5% of those who had intimate contact with gonorrhea sufferers would not contract the disease. In an issue closely related to his first issue, Shaffer contends that because R.H. definitely had gonorrhea and Shaffer allegedly did not, the evidence was both relevant and material as tending to show that Shaffer was not the assailant and thus militating in favor of a different result upon retrial. Our examination of the letter reveals otherwise.

 As James Beall, a doctor with the Bell Flower Clinic for Sexually Transmitted Diseases, testified, the statistics are the result of interviews made of sexual contacts of persons known to be infected. From a total number of contacts made, the Letter's figures are divided into those contacted who were infected, those preventatively treated, those already treated, and those who subsequently got treated. The statistics do not purport to represent how likely a person might be to get the disease after contact with an infected individual. While Shaffer is correct in noting that evidence is relevant when it logically tends to prove a material fact, *State v. Hall,* (1982) Ind., 432 N.E.2d 679, 682, and material when it tends to prove or disprove a fact relating to an issue in a lawsuit, *Estate of Azimow v. Azimow,* (1967) 141 Ind.App. 529, 531, 230 N.E.2d 450, 451–52, it is also well settled that the admission or exclusion of evidence is a matter within the sound discretion of the court. *Clouse v. Fielder,* (1982) Ind.App., 431 N.E.2d 148, 155; *Smith v. Crouse-Hinds Co.,* (1978) 175 Ind.App. 679, 682, 373 N.E.2d 923, 926, *trans. denied* (1979). *See also State v. Hall,* (relevancy is question for discretion of the court). The court will be reversed for an abuse of discretion in admitting or excluding evidence only upon a showing that the court's action is clearly erroneous and against the facts and circumstances before the court and reasonable inferences to be drawn therefrom. *See Rust v. Guinn,* (1981) Ind.App., 429 N.E.2d 299, 305, *trans. denied* (1982). We cannot say that the post-conviction court abused its discretion in the instant case. The evidence did not demonstrate what it was purported to have demonstrated. There was no error in excluding the statistical letter.

*Issue Three*

The post-conviction court did not err in excluding the testimony of juror Canales.

Defendant sought to introduce the testimony of juror Bruno Canales that had he known the victim had gonorrhea and Shaffer allegedly did not, his recommendation for a verdict would have been different. The post-conviction court excluded the evidence. We conclude that the evidence was properly excluded.

 Shaffer notes the well settled rule in this state that jurors may not, by

testimony or affidavit, impeach their verdict. *Bryant v. State,* (1979) 270 Ind. 268, 278, 385 N.E.2d 415, 421. He also correctly notes the reasons behind the rule:

" 'If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries.' "

*Eiland v. State,* (1982) Ind.App., 433 N.E.2d 400, 404, quoting *Stinson v. State,* (1974) 262 Ind. 189, 198, 313 N.E.2d 699, 704. Instead, Shaffer argues that the rule and its reasons are inapplicable in the instant case because rather than attempting to show the manner of deliberation or mental processes of the juror in reaching his verdict, the testimony was offered to show that the newly-discovered evidence would probably produce a different result upon retrial. However, we find ourselves in agreement with the state's position that the rationale of *Stinson* should apply with equal force in cases, such as this, where the petitioner seeks to meet his burden of proof upon the question of whether a different outcome would result upon retrial by relying upon a juror's speculation as to whether he would have voted differently based upon some piece of newly-discovered evidence. Any other decision on the part of this court would potentially subject jurors to a barrage of queries concerning how they would have voted given any one of an inestimable number of pieces of newly-discovered evidence. For this reason, we hold that our rule, disallowing a juror's impeachment of his own verdict, applies with equal force in a case where the defendant seeks to demonstrate that a different result would probably occur upon retrial in order to obtain a new trial based upon newly discovered evidence. Therefore, we cannot say that the court erred in excluding the testimony of juror Canales.

Finding no error in the court's conduct of the post-conviction proceedings, we, accordingly, affirm the judgment of the court.

Affirmed.

ROBERTSON, P.J., and NEAL, J., concur.