**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 03 2014, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY E. KIMMELL**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CORNELL JOHNSON,                    )
                                    )
    Appellant-Defendant,            )
                                    )
        vs.                    )    No.  71A03-1308-CR-321
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.             )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1211-FB-153

**March 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

An informant, who was paid by the police for completing drug transactions and testifying against defendants, engaged in a controlled buy of cocaine from appellant-defendant Cornell Johnson. Johnson challenges the sufficiency of the evidence following his convictions for Maintaining a Common Nuisance,[1] a class D felony, and Dealing in Cocaine,[2] a class B felony. Johnson argues that the identification procedure that the police used and the fact that the informant had a financial incentive contingent upon producing evidence of a cocaine purchase, rendered his testimony inherently improbable and incredibly dubious. Thus, Johnson claims that his convictions must be set aside. Finding the evidence sufficient, we affirm the judgment of the trial court.

FACTS

Jamian Stewart has worked as a confidential informant for the South Bend Metro Special Operations Sections (MSOS) since 2009. He began working for MSOS because he knew about local narcotics activity and has participated in more than twenty-five narcotics buys. Stewart has performed this type of work for income, in that he received twenty dollars for a contact that could potentially result in a drug sale, and fifty dollars if he participated in a controlled buy.

Investigator Robert "Bert" Wise, an officer with MSOS, is Stewart's "handler." Tr. p. 125, 147. At some point, MSOS received reports that a residence on Durham

---

[1] Ind. Code § 35-48-4-13(b).

[2] I.C. § 35-48-4-1.

Street in South Bend was being used as a "drug house." Tr. p. 160, 164, 177. Wise conducted surveillance on the house for about four days and saw some "short-stay" traffic, with people frequently arriving and leaving. Id. at 164, 177, 179-81.

On October 29, 2012, Officer Wise and Sergeant Erik Beckum arranged for Stewart to go to the residence and purchase cocaine from an individual known as "Pappa." Id. at 125-26, 158-59. Stewart had not previously met Pappa and therefore did not have anything against this individual. Before Stewart went to the residence, Officer Wise searched Stewart to insure that he did not have any currency, narcotics, or weapons on him. Officer Wise gave Stewart twenty dollars and fitted him with an audio recording device. Officer Wise drove Stewart to a spot about a block from the residence and Stewart walked the rest of the way. Stewart approached the residence and knocked on a side door. Officer Wise moved his vehicle so that he could continue to watch Stewart.

A young black male answered the door and Stewart asked if Pappa was available. Stewart identified himself as "Jay." Tr. p. 128. The young man led Stewart to the basement. Pappa, whom Stewart subsequently identified as Johnson, emerged from a bedroom, stood face-to-face with Stewart, and asked what he needed. Stewart answered that he needed a "twenty," which Stewart knew meant twenty dollars' worth of cocaine. Johnson took the money from Stewart, went to a side room, and returned with a small baggie that contained a white, rock-like substance that he handed to Stewart. Stewart thanked Johnson, promised to contact him again, and left the residence the same way that

3

he had entered. The rock-like substance was later tested and found to be .15 grams of cocaine. Tr. p. 263-64.

Stewart walked directly back to Officer Wise and the vehicle. Stewart immediately gave Officer Wise the cocaine and transmitting device. Wise again searched Stewart, and confirmed that Stewart did not have any other currency or weapons. Officer Wise then showed Stewart a single photo of the person known as Pappa and asked Stewart if that was the individual who had sold him the cocaine. Stewart confirmed that the man in the photo was Johnson and the individual who had "sold him the twenty." Id. at 136, 145, 176-77. Officer Wise then gave Stewart a ride home.

Two days later, on October 31, 2012, Officer Wise obtained and executed a search warrant for the residence. Officer Wise remained outside, while the South Bend SWAT team entered the residence. Once in the basement, the officers noticed a locked door to their left, which was the same bedroom from which Stewart had seen Johnson come and go. The officers ordered anyone who was inside to come out, and Johnson emerged. No one else was in the room. The officers searched the room and discovered a plate and spoon, along with drug packaging with some white rock-like substance.

One of the officers found a razor blade, which he knew from experience, is typically used to cut drugs such as cocaine; small bags of the kind in which cocaine is sold; a burnt spoon; and a burnt "chore boy," a household scrubbing pad that is used to hold cocaine when it is smoked. Tr. p. 201-07, 211, 220, 226, 228, 235-36. The residue was tested and determined to be a cocaine base. The police officers also discovered a

4

utility bill in Johnson's name with the Dunham Street address on it. Officer Wise spoke with Johnson that morning and asked if he went by the name of "Pappa," and Johnson admitted that he did. Id. at 179.

The State charged Johnson with dealing in cocaine, possession of cocaine, and maintaining a common nuisance. At Johnson's jury trial that commenced on June 25, 2013, Stewart identified Johnson in the courtroom without objection. Johnson was found guilty of dealing in cocaine and maintaining a common nuisance. Thereafter, Johnson was sentenced to concurrent terms of ten years for dealing in cocaine and to two years on the maintaining a common nuisance conviction. He was found not guilty of possession of cocaine, and he now appeals.

DISCUSSION AND DECISION

I. Standard of Review

Our standard of review for sufficiency claims is well settled. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Parahams v. State, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. It is the function of the trier of fact to resolve conflicts in the testimony and to

determine the weight of the evidence and the credibility of the witnesses. Yowler v. State, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

## II. Johnson's Claims

In addressing Johnson's challenges to the sufficiency of the evidence, we initially observe that he does not assert that the State failed to prove any particular element of either offense charged. Rather, Johnson seeks to attack Stewart's credibility in light of the incredible dubiosity rule, the fact that he profited financially in the transactions, and that Stewart's identification of Johnson as the offender was not worthy of credit.

### A. Incredible Dubiosity—Generally

Under the incredible dubiosity rule, our Supreme Court has observed that

Within the narrow limits of the "incredible dubiosity" rule, a court may impinge upon a jury's function to judge the credibility of a witness. If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Love v. State, 761 N.E.2d 806, 810 (Ind. 2002) (emphasis added). In addition, inconsistencies between the testimonies of multiple witnesses do not make the evidence "incredible" as a matter of law, and only go to the weight of the evidence. Morell v. State, 933 N.E.2d 484, 492-93 (Ind. Ct. App. 2010).

As for Johnson's dealing in cocaine conviction, the evidence at trial established that MSOS officers searched Stewart to insure that he did not have any currency, narcotics, or

6

weapons on him, gave him buy money, and fitted him with an audio recording device. Tr. p. 126-27, 141, 166-67. The officers monitored his movements to insure that he did not have contact with anyone else. Stewart went to Johnson's residence and entered the basement where Johnson's bedroom was located. Johnson asked what Stewart needed, and when Stewart asked for a "twenty," Johnson took the money and handed Stewart .15 grams of cocaine in a small baggie. Id. at 130, 132-33, 173-74. Stewart identified Johnson from a photo that Officer Wise showed him as the person who had delivered the cocaine to him. When the search warrant was executed, Officer Wise spoke with Johnson and confirmed that he went by the name of "Pappa." Id. at 179. During the trial, Stewart identified Johnson in the courtroom as Pappa without objection. This was sufficient evidence to establish that Johnson committed dealing in cocaine.

As for Johnson's claim of incredible dubiosity, he makes no showing that Stewart's testimony was contradictory. Rather, Johnson makes the unsupported assertion that he satisfies the incredible dubiosity rule "for the reasons stated above." Appellant's Br. p. 7. Moreover, plenty of circumstantial evidence exists in this case. As a result, because Johnson cannot establish the elements of incredible dubiosity with respect to the dealing conviction, his argument fails.

To establish that Johnson committed the offense of maintaining a common nuisance, the State was required to establish that Johnson knowingly maintained a building that was used for unlawfully keeping, offering for sale, selling, delivering, or

7

financing the delivery of a controlled substance or items of drug paraphernalia. I.C. § 35-48-4-13(b).

The State presented testimony that MSOS officers conducted surveillance on the residence for nearly four days and observed "short-stay" traffic, with people frequently arriving and leaving after a short time. Tr. p. 177, 179-81. The police officers arranged for Stewart to conduct a controlled buy from Johnson at the residence.

As discussed above, the officers obtained a search warrant for the residence and found drug paraphernalia, cocaine residue, and plastic baggies for packaging cocaine. Id. at 201-07, 211, 220, 226, 228. They also found a utility bill in Johnson's name with his address on it. This evidence is sufficient to establish that Johnson maintained a common nuisance.

While Johnson seeks to invoke the doctrine of incredible dubiosity with regard to this conviction, we note that multiple witnesses testified about the offense. Id. at 125-27, 130-32, 158-59. Moreover, the officers' surveillance of the premises revealed traffic consistent with drug dealing or usage. Id. at 177, 179-81. Several of the officers testified about the evidence they found during the search. Id. at 125-27, 130-32, 158-59. Johnson does not contend that any of the witnesses' testimony was contradictory. And in light of all the direct evidence that was presented at trial, there is no need for, much less an absence of, circumstantial evidence corroborating the testimony of a single witness. As a result, Johnson's incredible dubiosity argument in this instance also fails.

8

Finally, Johnson argues that Stewart's credibility was not reliable because he identified Johnson from a single photograph that the police had shown to him. Johnson admits that the "identification procedure employed by police in this case was not so suggestive to render Mr. Stewart's identification of [Defendant] inadmissible," but incorrectly asserts that the identification procedure, combined with payment to Stewart, renders Stewart's testimony unreliable and incredibly dubious. Appellant's Br. p. 6. This issue was placed before the jury that heard clear and explicit evidence about Officer Wise's and Stewart's use of the photograph to confirm that Johnson was the individual who sold drugs to Stewart, along with the payment that was given to him in exchange for his testimony and participation in the transaction. In short, Johnson's incredible dubiosity argument also fails with regard to his conviction for maintaining a common nuisance.

## B. Financial Compensation

Johnson also contends that his convictions must be set aside because he was paid in exchange for his testimony at trial and participation in drug transactions. As a result, Johnson argues that the "police provided Stewart with a motive to fabricate evidence." Appellant's Br. p. 5.

However, the jury was informed of the benefits that the witness received. Our Supreme Court has long recognized that the State is under a continuing duty to disclose any inducements offered in exchange for a witness' testimony. Williams v. State, 409 N.E.2d 571 (Ind. 1980). The fact-finding body must therefore have before it all of the

9

relevant circumstances that caused or induced the witness to testify as he did, including the rewards for such testimony. <u>Diggs v. State</u>, 429 N.E.2d 933, 934 (Ind. 1981).

Here, the deputy prosecutor made clear to the jury the extent to which Stewart dealt with law enforcement personnel. Hence, the jury was fully aware of any issues that might have arisen from the facts regarding Stewart's credibility as a result of payment to him as an informant. Therefore, Johnson's claim that his convictions should be set aside because Stewart had a financial motive for Stewart "to fabricate evidence of illegal activity," fails. Appellant's Br. p. 5.

In conclusion, the jury was entitled to weigh the evidence and determine which portions of the testimony it would accept, and it was free to accept the testimony of Stewart, Officer Wise, and the other officers, thus finding that Johnson committed the charged offenses. In short, Johnson's arguments amount to a request to reweigh the evidence, which we will not do. <u>Drane v. State</u>, 867 N.E.2d 144, 146 (Ind. 2007).

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.